Kenneth Ray SHIPMAN v. STATE of Arkansas

CR 77-13                                    550 S.W. 2d 454

Opinion delivered May 9, 1977
(Division II)
[Rehearing denied June 13, 1977.]

*Kenneth C. Coffelt,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant entered a plea of guilty on June 30, 1976 to separate charges of felonious burglary and theft. He was on the same date, sentenced and committed to the State Penitentiary for a term of four years, with credit for two months pretrial incarceration in each case, which would run concurrently. See Ark. Stat. Ann. § 41-903 (Crim. Code, 1976). On July 28, 1976, he filed his motion to vacate the judgments and sentences. The motion was heard as one for post-conviction relief under Rule 37, Rules of Criminal Procedure, and denied. Hence, this appeal. We find no error and affirm.

Two informations charging the crimes were filed June 15, 1976. The informations alleged burglary from two separate dwellings in Jacksonville and theft from each of them. On June 25, 1976, the public defender was appointed by order of the circuit court to represent appellant. Deputy Public Defender Bill Simpson actually represented him. Employed counsel represented him on the motion to vacate his sentence. The motion was in the name of appellant, allegedly 16 years of age, and his natural guardian, father, and next friend, Don Shipman. It contained allegations that appellant had been unable to freely communicate with his parents during his pretrial incarceration due to his being held on excessive bail, that his parents did not know that he was going to plead guilty, did not consent to the entry of this plea, were not present when it was entered, or advised that he would appear in court on the day the plea was entered and that he should not have been represented by the public defender. It was also alleged that there were mitigating circumstances in his favor, that he had not been previously convicted, that he and his parents believed that he was not a party to the offense charged, that he tried to persuade others not to commit the offenses and that the person who actually committed the crimes had never been brought to trial. He asked

that his guilty plea be set aside and that he be given a jury trial.

One of the points relied upon by appellant for reversal is his contention that the trial court refused to hear his motion, on the ground that the court was without jurisdiction to hear it. Appellant characterizes his motion as a motion for new trial. The trial judge correctly held that, unless the motion was amended so that it could be treated as a motion under Rule 37, Rules of Criminal Procedure, he could not consider it. Basically it was only a motion to permit appellant to withdraw his guilty plea. This could have been permitted in the trial court's discretion at any time before sentencing. Rule 26.1 (e) Rules of Criminal Procedure. A timely motion to withdraw a guilty plea to correct a manifest injustice may be made after the entry of judgment. Rule 26.1 (b), Rules of Criminal Procedure. Such a motion must necessarily be made under Rule 37, if the sentence has been carried into execution. Rule 26.1 (c), Rules of Criminal Procedure requires that in order to be entitled to withdraw a plea of guilty, one must show that it is necessary in order to correct a manifest injustice for such reasons as denial of effective assistance of counsel, the involuntariness of the plea and other such grounds as would make the sentence subject to collateral attack under Rule 37.

This is consistent with case law prior to the adoption of the Rules of Criminal Procedure in that such a motion could have been entertained after entry of judgment but before the sentence had been put into execution. See *Morris v. State,* 226 Ark. 472, 290 S.W. 2d 624. However, when a valid sentence had been put into execution, the trial court was without jurisdiction to modify, amend or revise it, either during or after the term at which it was pronounced. *Charles v. State,* 256 Ark. 690, 510 S.W. 2d 68; *Williams, Standridge & Deaton v. State,* 229 Ark. 42, 313 S.W. 2d 242; *Emerson v. Boyles,* 170 Ark. 621, 280 S.W. 1005.

Appellant's contention that the trial court permitted him to offer testimony in his motion, but that the evidence was not considered by the court, is not borne out by the record.

Otherwise, appellant's attack is based, for the most part,

on the alleged failure of the trial court to comply with Rule 24, Rules of Criminal Procedure. First, he claims that Rule 24.2 was not complied with and, perhaps inferentially, that he was denied the effective assistance of counsel.

According to the record the public defender was appointed when appellant made an affidavit of indigency. Appellant argues that appellant should have been accorded the right to employed counsel, who would surely, he says, have endeavored to obtain a suspended sentence on a plea of guilty to grand larceny (now theft), noting that Jones, allegedly the principal offender, had not been prosecuted. He contends that the record shows that his father and the father's fiancee were prepared to employ counsel for him. The evidence on this score hardly bears out the argument. Appellant had been in jail two months without representation when he was sentenced. His affidavit of indigency was filed only five days earlier. He had been represented by a public defender at a hearing in a municipal court attended by his father, who said that he could not afford to employ an attorney for him at that time. The father testified that he had wanted appellant to have a different public defender, but that he thought the son would not be taken to court if he (the father) did not appear. He said that he was trying to get the money to employ appellant's present counsel. He testified, however, that he had quit his job for health reasons, and had only been employed for a very short time before the hearing on the motion. The father's fiancee was employed and said that she had tried to help appellant, but had no opportunity to do so. She never talked with the public defender and took no step toward employment of counsel for appellant prior to his sentencing. Rule 24.2 simply provides that a defendant shall not be required to enter a plea until he has had an opportunity to employ counsel, or, if he is eligible for the appointment of counsel, until counsel has been appointed, unless the assistance of counsel has been waived or refused. There was certainly compliance with the rule. The prospect of appellant's having employed counsel was not very bright and there was no showing of any definite or specific efforts to employ counsel for him until after he was sentenced.

The record discloses nothing on which we can say that

the trial judge erred in holding against appellant on the question of the effective assistance of counsel. There was good reason for appointment of the public defender and appellant was not deprived of adequate opportunity for the employment of an attorney of his or his father's choice. The fact that appellant was represented by Simpson at the municipal court hearing was well known to his father, who was present, but was without means of employing an attorney.

Appellant's argument includes assertions that employed counsel would certainly have made an effort "to turn the case on a grand larceny [now theft] plea of guilty followed by a suspended sentence," due to his age and the fact that he is a first offender, pointing out that "the principal offender, Jones," who had a penitentiary record, was never prosecuted.

There are certain facts that are clearly reflected by the record. Appellant and one Lawrence, who was also charged with the crimes, were arrested while in an automobile owned and driven by Jones and had made voluntary statements incriminating themselves, but exonerating Jones. Appellant wanted to plead guilty at the time of a preliminary hearing in the Municipal Court of Sherwood, but preliminary hearing was waived, after Simpson's efforts to have appellant's case referred to the juvenile court were unsuccessful. Appellant, in his testimony at the hearing on the motion claimed that he was unaware of the intentions of the others, protested against them and refused to participate. Yet he admitted either taking two radios from one house that was burglarized or at least carrying them from the house to the automobile. He admitted that an eyewitness had seen all three enter one of the houses, and that, when a lady started shooting at them, he dropped some of the groceries taken from it. He stated that he, Lawrence and Jones went to a "Dairy Queen" after leaving the last place under gunfire and had a hamburger and a coke and played some music. Even though he testified that he protested all along and wanted to leave before the thefts and to return the stolen goods after the thefts, he reentered the Jones automobile and was in it when they were stopped by a police officer. In relating the course of events in his own words, appellant stated that the policeman was "getting stuff out of the car that they have stole, that we stole. . . ." He had not told his father the full extent of his involvement.

Simpson, who had served as a deputy public defender for five months after one year and seven months as an intern in the office, had talked with appellant on three or four occasions, at least one of which was prior to the circuit court appointment. He said that appellant freely admitted his guilt when they discussed the matter at the time of the preliminary hearing. Simpson had been permitted to review the prosecuting attorney's file in the case and had talked with a deputy sheriff who was familiar with the case. He felt that the state had a strong case and advised appellant's father that it would be a difficult case to win in a jury or court trial. He had talked with appellant's father by telephone about the matter at least three times and had advised the father of the fact (admitted by appellant) that, in spite of the father's and the father's fiancee having advised appellant not to plead guilty, appellant had decided to accept the plea bargain. He told the father when the plea would be entered and encouraged him to be present. The father did not attend because "he just didn't want to be down there." He said he didn't think appellant would be sentenced if he did not appear. The father's fiancee also knew of the date when appellant's plea of guilty was entered, but, in spite of the fact that she wanted an opportunity to come and do what she "could for the boy with Judge Kirby," she did not come to court on that occasion because it was not convenient and she did not know what she could do. Parental consent is not essential to a voluntary custodial confession. See *Jackson* v. *State,* 249 Ark. 653, 460 S.W. 2d 319. Certainly it is not required for a voluntary plea of guilty in open court.

Simpson conferred with the deputy prosecuting attorney handling the case for the state. This attorney refused to recommend a suspended sentence because of the trial judge's strong policy against such sentences in burglary cases. After negotiating for a three-year sentence, the best offer Simpson was able to obtain was a four-year sentence to cover all charges. He knew that the prosecuting attorney's office sometimes charged larceny only in some cases and recommended a suspended sentence but he made no effort to get the charges in this case changed. When Simpson said that he could not enter a guilty plea for appellant unless appellant was actually guilty, appellant said that he was guilty and signed a plea statement acknowledging his guilt, after Simp-

son had carefully read it to him. This statement certainly indicated that the plea of guilty was made voluntarily, knowingly and understandingly.

Simpson had told appellant's father that a trial could result in a greater sentence, that juries sometimes recommended suspended sentences for youthful offenders but the judge before whom the case would be tried was not lenient on burglars and generally sentenced them to the penitentiary.

Simpson testified that appellant's father agreed to the acceptance of plea bargain, if that was what his son wanted to do. The public defender said that he had told him that the judge would require that appellant serve one-third of the sentence before being eligible for parole, but that this did not necessarily mean that he would have to do so. Don Shipman testified that his objection was not to the four-year sentence, but to the length of time his son would have to serve and admitted that he had said that it would be all right if he knew approximately how long appellant would have to stay at the penal institution at Tucker. He said that Simpson told him that young offenders did not stay very long. The burden was on appellant to show that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *Clark* v. *State*, 255 Ark. 13, 498 S.W. 2d 657. We cannot say that he met it.

Appellant contends that the trial court ignored other provisions of Rule 24 in that the court was never advised of the facts in the case, and that the sentencing judge had stated that he did not know what had happened. Appellant seizes upon remarks of the trial judge during the course of the hearing but before its conclusion. The rule in question requires that before accepting a guilty plea, the court advise the defendant of his rights and ascertain that the plea is accurate and voluntary. Appellant introduced a transcript of the proceedings at the time the plea was entered. It reflects that the deputy prosecuting attorney stated details of the crimes and circumstances surrounding appellant's arrest, after the trial judge read the informations in full. It was disclosed that appellant's attorney had explained the elements of the crimes charged to appellant and had read to him the pertinent Criminal Code provisions. The judge determined, by inquiring of appellant himself, that appellant knew that he was

waiving his right to a jury trial, was voluntarily entering a guilty plea to the charges, and was in fact guilty and that he knew that the judge was not bound to accept the terms of the plea bargain. The age of appellant and the absence of any criminal record were disclosed to the sentencing judge. Appellant's testimony at the hearing on the motion clearly indicates that he was well aware of the nature of the charges and the potential sentence. There was substantial compliance with this rule, insofar as the particulars mentioned by appellant are concerned.

Appellant also contends that the transcript as certified to this court shows that the trial judge never signed the judgment sentencing him and that this is required by Ark. Stat. Ann. § 22-314 (Repl. 1962). There are at least two reasons why this contention is without merit. It is raised for the first time on appeal. The statute relied upon applies only to actions of the court in vacation. Furthermore, the transcript is a reproduction of the court record, which would not necessarily reflect signatures on an original judgment.

The judgment is affirmed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.