**Otis Darnell THOMAS, Appellee,**

v.

**A.L. LOCKHART, Director of Arkansas Department of Correction, Appellant.**

**No. 83–2321.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1984.

Decided July 5, 1984.

---

Robert B. Wellenberger, Dallas, Tex., for appellee.

Steve Clark, Atty. Gen. by Velda West Vanderbilt, Asst. Atty. Gen., Little Rock, Ark., for appellant.

Before LAY, Chief Judge, HEANEY and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

A.L. Lockhart, Director of the Arkansas Department of Correction, appeals from the District Court's order granting the petition of Otis Darnell Thomas for a writ of habeas corpus under 28 U.S.C. § 2254.[1] We agree with the District Court that Thomas did not receive effective assistance of counsel; consequently he did not make a voluntary, knowing, and intelligent guilty plea. *See Thomas v. Lockhart,* 569 F.Supp. 454 (E.D.Ark.1983). Therefore, we affirm.

The information charging Thomas, a black man, with forcible rape of a white woman was filed on November 29, 1979 at 4:30 p.m. in the Circuit Court of Drew County, Arkansas. On that day the state trial court determined that Thomas was indigent and appointed James Barker as Thomas' attorney. The court directed Barker, who practiced about thirty miles away, to report to the courthouse immediately.

When Barker arrived late that afternoon, the deputy prosecuting attorney stated that he would recommend a thirty-year sentence if Thomas pled guilty. This recommendation apparently was based upon the sentence in a recent case in Drew County in which a black man had raped a white woman. Barker, who conferred with Thomas for approximately an hour, testified that Thomas had decided to plead guilty. When the court formally arraigned Thomas, however, he entered a plea of not guilty.[2] Barker then discussed the case with Thomas, his mother, and his step-father.

One week later, on December 6, 1979 about 3:30 p.m., the state trial court contacted Barker and instructed him to come to the courthouse about 5:00 p.m. Barker was not given a specific reason for the summons. When Barker arrived, Thomas told Barker that he was going to plead guilty. Since November 29, Barker had had no further contact with Thomas. The parties then appeared before the court and Thomas entered his plea. *See Thomas v. Lockhart,* 569 F.Supp. at 459–61 (E.D.Ark. 1983). The state trial court sentenced him to thirty years.

On May 12, 1980, Thomas filed a pro se petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. He alleged, among other things, that his plea was not made freely and intelligently and that he did not receive effective assistance of counsel. After an evidentiary hearing, the state trial court denied the motion. The Arkansas Supreme Court affirmed. *Thomas v. State,* 277 Ark. 74, 639 S.W.2d 353 (1982). Thomas then brought this federal habeas action. The federal District Court relied upon the record of the state court proceedings and did not conduct any further evidentiary hearings.

The District Court concluded that Thomas was denied effective assistance of counsel for several reasons. First, Barker could have moved for a continuance or withdrawn from the case where the circumstances suggested an unseemly desire by the state trial judge to rush resolution of the case, yet he did neither. Second, the

---

**1.** The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

**2.** Barker's testimony suggests that Thomas twice entered a plea of not guilty on November 29— once without benefit of counsel.

court found that Barker failed to investigate adequately the facts before advising Thomas with regard to his plea. Thomas, for example, provided Barker with the names of three alibi witnesses; Barker made no attempt to contact them. In addition, Thomas had a history of mental problems, which Barker was made aware of but did not investigate. Third, Barker never explained that Thomas was entitled to a presumption of innocence and that the state had the burden of proving his guilt beyond a reasonable doubt. Fourth, Barker gave Thomas and his family the impression that a trial would be futile because of racial prejudice. Barker made several vague statements to them about his own racial prejudice. Barker also told them he doubted that a jury would believe a black man's testimony instead of that of a white victim. Fifth, Barker never investigated the similarities and differences between Thomas' case and the one relied upon by the prosecutor to recommend a thirty-year sentence. Finally, the District Court concluded that these acts and omissions by Barker prevented Thomas from entering a knowing, voluntary, and intelligent plea.

■ It is clear that the District Court applied the correct legal standard, namely, that for Thomas to prevail on his ineffective assistance of counsel claim, he must establish that his attorney failed to exercise the skill and diligence that a reasonably competent attorney would exercise under similar circumstances and that he was prejudiced by his attorney's ineffectiveness. *See, e.g., Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hill v. Lockhart,* 731 F.2d 568, 572 (8th Cir.1984); *Hawkman v. Parratt,* 661 F.2d 1161, 1165 (8th Cir.1981); *Benson v. United States,* 552 F.2d 223, 224 (8th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). We agree with the District Court that the representation afforded to Thomas by his appointed attorney was inadequate; consequently, Thomas' plea was not a "knowing and intelligent" act. *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970). There is a "reasonable probability that, but for [the various failures of the attorney], the result of the [plea proceedings] would have been different." *See Strickland,* 104 S.Ct. at 2068.

■ Neither this Court nor the District Court is bound by the state courts' conclusions regarding the performance of Thomas' attorney and the resulting prejudice. "[A] state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court" because it is "a mixed question of law and fact" and not a question of historical fact. *Id.* at 2070; *see also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).[3]

**3.** Factual determinations made by a state court which a federal court presumes to be correct pursuant to 28 U.S.C. § 2254(d) do not include mixed questions of fact and law such as whether Thomas received effective assistance of counsel. But the specific historical facts found by the state court in the course of deciding an effectiveness claim are subject to the deference requirement of § 2254(d) unless the criteria of certain statutory exceptions are met. For example, state court findings of fact are not entitled to deference where the record does not fairly support these findings. *Id.* at § 2254(d)(8).

The District Court, as does this Court, primarily disagrees with state court conclusions regarding the effectiveness of Thomas' counsel. We note, however, that most of the underlying state court findings do not specifically address what conversations occurred between Thomas and his counsel and that a number of the findings in the Rule 37 proceeding are not supported by the record.

The state court, for example, found that on November 29 Thomas indicated that he did not want a jury trial. Trial Transcript (Tr.) at 61. But the record clearly shows that he requested one. Tr. at 16. The state court also found that on December 6 Thomas, members of his family, and Barker engaged in a lengthy conference immediately prior to his plea. Tr. at 61. The record reveals, however, that they had discussed Thomas' case on the evening of November 29 subsequent to Thomas' plea of not guilty. Thomas' family was not present on December 6. Moreover, discussion between Barker and Thomas was brief. Barker simply asked Thomas if the plea was his choice and reminded him that he could have a jury trial.

The state court further found that Thomas was sentenced to thirty years as a result of negotiations with the prosecuting attorney. On

Barker provided perfunctory representation by appearing in court at Thomas' side. Beyond that, he ignored his duty as Thomas' advocate. According to Barker, he was "the vehicle whereby [Thomas'] story got told in court, and that [he] could try a good law suit." Trial Transcript (Tr.) at 137. This extremely limited view of his role permeates Barker's actions with regard to Thomas.

■ Barker's investigation of the case consisted of reviewing the investigative file of the prosecuting attorney. The file included a statement purportedly made by Thomas in which he admitted that he was at the laundromat with the victim, that he showed her a knife, and that he had sexual intercourse with her. In addition, Thomas was carrying a knife when he was arrested. Appellant contends that Barker's review of this material in the prosecutor's file constitutes adequate investigation of Thomas' case. We do not agree.

Under the circumstances of this case, we believe that Barker's investigation fell short of what a reasonably competent attorney would have done. Thomas maintained that he was innocent and that he had never seen the victim until he was arrested. Thomas also claimed that he had not admitted to the police that he had had sexual intercourse with the victim. Barker did not interview the victim to assess her version of the facts nor did he interview the police officers involved in the taking of Thomas' statement and in his pre-trial identification.

Both Thomas and his mother testified that he gave Barker the names of three alibi witnesses. Barker conceded that Thomas had "talked about someone ... being able to say something;" he also admitted that he did not speak with "those people that afternoon." Tr. at 143.

There was no way ... ah, it was just not appropriate.... [I]f what they gave me in the investigative file was what there was to the file, and based on what he was telling me, the act occurred, the

only question involved was, did it occur with or without consent. That was the only factual question to be decided ... by anybody, from my recollection.

*Id.*

Thomas supplied Barker with information which was critical in order for Barker to assess intelligently whether Thomas committed the rape and whether there were any defenses. *See generally Strickland,* 104 S.Ct. at 2066–67 (scope of the duty to investigate). Thus, this case can be distinguished from cases in which the defendant did not provide counsel with any information casting doubt on the events as portrayed by the files of the prosecuting attorney. *See, e.g., Benson,* 552 F.2d at 225; *cf. Eldridge v. Atkins,* 665 F.2d 228 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982); *Harshaw v. United States,* 542 F.2d 455, 457 (8th Cir.1976); *McQueen v. Swenson,* 498 F.2d 207 (8th Cir.1974).

■ Barker also fell short in the performance of his duty by failing to investigate the seriousness of the mental problems from which Thomas suffered. Thomas had been in the state mental hospital five times within approximately four years immediately prior to the rape. Thomas' mother also indicated that he had taken an overdose of drugs on one occasion, only four days after release from the hospital. At the time of his last hospital release, he was placed under the supervision of the local mental health center. Thomas' mother testified that she offered to show Barker letters and medication, but that Barker would not look at them. Thomas and his mother testified that he was under medication at the time of his arrest; he did not receive his medication while in jail and thus had been without the medication for a substantial period of time when he entered his plea of guilty.

Barker, Thomas, and Thomas' mother agree that Barker was told about Thomas'

mental problems. Both Thomas and his mother testified that they asked Barker to arrange a mental examination. According to Thomas, Barker suggested that it would not help to send Thomas to the state hospital for a psychiatric examination because the hospital would send Thomas back and report that he was capable of standing trial. Barker further advised that unless a doctor examined Thomas immediately after the alleged rape, the doctor could not do anything in Thomas' favor.

Appellant relies on an examination by a state psychiatrist, which was done in connection with the Rule 37 proceedings (approximately a year after the alleged rape and Thomas' plea). The examining psychiatrist concluded that Thomas "was probably not suffering from mental disease ... of such degree as to make him unable to appreciate the criminality of his conduct ... at the time of the alleged offense" and that Thomas had the mental capacity to understand and participate in the Rule 37 proceedings. Tr. at 166 (State's Exhibit No. 4).

■ "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 104 S.Ct. at 2065. We believe that just as hindsight cannot be used to condemn counsel's performance, it cannot be used to justify it. Nevertheless, the psychiatrist's conclusions are relevant to the prejudice component of Barker's ineffective assistance of counsel claim. The report at least somewhat reduces the probability that harm resulted from Barker's failure to pursue an investigation regarding the insanity defense. It is noteworthy, however, that the report of the examining psychiatrist sheds no light on Thomas' condition at the time of his plea. Moreover, Barker did not alert the court and the prosecuting attorney to Thomas' history of mental problems, a circumstance that might have affected plea negotiations and the sentence.

■ Barker also gave Thomas and his family the impression that Thomas would have to prove his innocence. Barker's remarks led Thomas to believe that racial prejudice would determine the jury verdict and that Barker did not want to handle the case because of its interracial aspect. Thomas, for example, testified that Barker told him a jury would not believe a black man accused of the rape of a white woman. Similarly, Thomas' mother recalled that Barker indicated that Thomas did not have "a prayer because there was a black man against a white lady, that [Thomas] would get fifty [years] to life in the pen." Tr. at 107. Barker indicated that he would feel "funny" representing a black man accused of raping a white woman. Tr. at 84. He admitted that when Thomas' mother told him that, according to her Bible, race should not make any difference, he replied, " 'Sister, you're not in the church house, you're in the courthouse in Monticello.' " Tr. at 109. Barker may have been trying conscientiously to alert Thomas and his family to potential problems arising from racial prejudice. Nevertheless his statements left them with the understanding that he did not want to represent a black man accused of rape and that to go to trial would be an exercise in futility. Thomas' step-father declined to hire an attorney for Thomas after Barker suggested that Thomas did not have any chance of a result in his favor. The state trial court's perfunctory mention of the presumption of innocence and the state's burden of proof was insufficient to dispel the inferences Thomas and his family necessarily drew from Barker's remarks and from his attitude.

■ Barker was unfamiliar with the case relied upon by the prosecuting attorney in recommending a sentence of thirty years. Barker nevertheless indicated his satisfaction with the thirty-year sentence in his appearances before the state trial court. Tr. at 20–21. This behavior is generally indicative of Barker's cavalier attitude that his job did not begin until trial. This does not mean that defense counsel always must actively negotiate with the prosecuting at-

torney. *See Hawkman,* 661 F.2d at 1170–71 (defense counsel may have a duty to initiate plea bargaining negotiations in some cases). We believe, however, that defense counsel should be able, at a minimum, to set before the judge the factors that might mitigate the defendant's sentence. Thus, Barker should have inquired into the basis for the recommendation, but he failed to do so.

Barker testified that the allegedly similar case involved a thirty-year sentence in the jury trial of a black man who raped a white woman. Tr. at 138–39. On appeal, however, both parties state that the comparative case is *Reed v. State,* 276 Ark. 318, 635 S.W.2d 472 (1982),[4] in which a black man pled guilty to the rape of a white woman. An examination of *Reed* reveals that the defendant in that case committed the rape during the course of a burglary and theft. Moreover, the defendant in *Reed* did not appear to have a history of mental problems. Thus, there were bases for Barker to argue that *Reed* presented a more aggravated set of facts and that Thomas' sentence should be less severe.

■ Our perusal of the record in this case leads us to the conclusion that the findings of fact of the District Court are not clearly erroneous and that the District Court did not commit any error of law. We agree with the District Court that Thomas has made a convincing showing that his appointed counsel did not fulfill his responsibility as an advocate on Thomas' behalf, thereby preventing a voluntary, knowing, and intelligent choice by Thomas to plead guilty.

Therefore, the judgment of the District Court is affirmed.

---

4. In *Reed,* the Arkansas Supreme Court vacated the sentences imposed because the state failed to carry its burden of proving that defendant's plea was voluntarily and intelligently entered; this burden arose because there was no record of the guilty plea proceedings as required by Rule 24.7 of the Arkansas Rules of Criminal Procedure. The defendant had pled guilty on charges of rape, burglary, and theft on September 28, 1977, approximately two years prior to the events involving Thomas.