**Dwight FORD, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 89–1354.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1990.

Decided June 4, 1990.

however, he has timely appealed the September 8 judgment. *See Jackson,* 788 F.2d at 1298.

Q. Byrum Hurst, Jr., Hot Springs, Ark., for appellant.

C. Kent Jolliff, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and ROSS, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Dwight Ford appeals from the district court's[1] order denying his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254 (1982). Ford, at the age of sixteen, entered negotiated guilty pleas to three counts of aggravated robbery and two counts of rape. He was sentenced to five concurrent terms of life imprisonment. On appeal, Ford argues that the court

1. The Honorable Henry L. Jones, Jr., United States Magistrate for the Eastern District of Ar-

should have granted his petition for a writ of habeas corpus because: (1) he was denied effective assistance of counsel as his guilty plea was not voluntarily, knowingly, and intelligently made after his mother instructed his counsel that Ford should not plead guilty; and (2) he was coerced into pleading guilty because his counsel failed to advise him that his mother objected to his guilty pleas, and because the pleas were given soon after Ford and his counsel discussed changing his pleas from not guilty to guilty. We affirm the judgment of the district court.

Ford was fifteen years old when he was charged with three counts of aggravated robbery and two counts of rape in July, 1982. Two co-defendants were also charged in the crimes. Ford, represented by retained counsel, entered pleas of not guilty. In December, 1982, Ford and a new attorney, Darrell F. Brown, appeared in court to change his pleas from not guilty to guilty. Ford was then sentenced to five concurrent terms of life imprisonment. Following sentencing, he retained another attorney and filed a petition to vacate his guilty pleas. After a hearing, the state trial court denied his petition, and that decision was affirmed on appeal within the state judicial system. Ford then sought a writ of habeas corpus in federal district court. The action was referred to a United States Magistrate who conducted an evidentiary hearing. The petition for habeas corpus relief was denied, and this appeal followed.

I.

Ford argues that he was denied effective assistance of counsel because his guilty plea was not voluntarily, knowingly, and intelligently given after his mother instructed his counsel that Ford should not plead guilty. Ford also contends that he was coerced into pleading guilty because his counsel failed to advise him that his mother objected to his guilty pleas, and because the pleas were given soon after he

kansas.

and his attorney discussed changing his pleas to guilty. Since these arguments are intertwined, we will consider them together. Ford contends that the counsel he received was ineffective because of the special circumstances of his case. There was evidence that Ford had been receiving psychiatric care since he was three years old and that he had been in special education classes.

■ When considering an appeal from the district court's action on a habeas corpus claim based upon ineffective assistance of counsel, "this court may engage in its own independent review of the district court's conclusion, because the issue of ineffective assistance of counsel presents a mixed question of law and fact." *Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). "If a state court has rendered specific predicate factual findings, those findings should be presumed correct unless conditions exist which cast those findings into doubt. The district court's findings of fact, however, are reviewable under the clearly erroneous standard." *Id.* (citations omitted). After considering the record of the evidentiary hearings conducted by both the district court and the state court, we have independently reviewed the district court's conclusion and agree that Ford was afforded effective assistance of counsel and that his guilty plea was voluntarily given.

The following witnesses, in addition to Ford himself, testified at the federal habeas hearing: (1) Betty Willis, Ford's mother; (2) James Norwood, Ford's co-defendant; and (3) Darrell Brown, Ford's counsel when he pled guilty. Ford testified that his attorney, Brown, said that Ford's options were to either enter a negotiated plea of guilty and receive five concurrent life sentences or proceed to trial and receive five consecutive life sentences. Ford stated that he did not know the difference between consecutive and concurrent sentences, and did not know that someone who is serving a life sentence cannot be paroled without a commutation from the governor. Ford acknowledged, however, that he did

sign the plea statement and also admitted that the transcript correctly reflected his responses to the judge's questioning at the plea hearing. Ford said that his answers indicated that he knew the consequences of pleading guilty only because his attorney told him that he must answer affirmatively in order for the judge to accept his plea.

Ford's mother, Betty Willis, testified that she instructed Brown that Ford should not plead guilty to the charges. She also testified that, on the day of the guilty plea, when Brown told Willis in a telephone conversation that he was recommending that Ford plead guilty, she discharged Brown and again told Brown that Ford should not plead guilty.

James Norwood, one of Ford's co-defendants, also testified. He claimed that he forced Ford to accompany him on the night of the crimes. He also said that Ford had not participated in the crimes to the extent Norwood had. The record contains very little information, other than this testimony, about the nature of the crimes.

Darrell Brown testified as to his qualifications and experience as an attorney. His experience included serving as a magistrate for seven years and also as a special judge in the Arkansas state court system. In regard to Ford's case, he stated that he had done extensive research, investigation, and preparation, including consulting private investigators and a psychiatrist. Brown further stated that Ford had admitted to him that he committed the crimes, although Ford told him that he felt that he had been influenced by the older co-defendants and was not competent to form the intent necessary for the crimes. Brown testified that he discussed with his associates the details of the case, including Ford's age, Norwood's statement to the police implicating Ford, Ford's assertion that he had committed the crimes while under the influence of drugs, and the manner in which the gruesome nature of the case could be presented to a jury.

Brown said that he had attended the trial of James Campbell, Ford's other co-defendant, who was also Ford's brother. Campbell was sentenced to two consecutive for-

ty-year prison terms. Campbell had performed a lesser role in the crimes than had Ford, and Brown discussed with Ford the significance of his brother's sentence. Brown further stated that the prosecutor would not "budge" from his position of seeking life imprisonment on each of Ford's charges.

■ On the day that Ford entered the guilty pleas, he told Brown that he wanted to talk with his mother. Brown then telephoned Willis and explained that if her son proceeded to trial, he could receive five consecutive life sentences. He said that Willis was distraught, that she reiterated that she did not want Ford to plead guilty, and that she then told Brown that she did not want him to represent her son. According to Brown, Ford then explained to his mother that "It's my life" and "I'm the one that has to serve the time, and I'm going to make the decision." Finally, Brown testified that Willis told him, "if that's the best you can do, then I guess that's what we have to live with." Brown further testified that, despite Ford's age, Brown was convinced that he and his client had thoroughly discussed the case, that Ford understood his options, and that Ford was not rushed or coerced into making a decision. Willis denied that Brown tried to convince her that he should plead guilty or that Willis finally acquiesced in the decision.

After hearing this testimony, the district court made the following factual findings:

> In the present case, the Court credits Mr. Brown's testimony that he explained his options and parole considerations to petitioner and that petitioner understood the consequences of his plea.

> In addition, the Court has examined the transcript of the plea proceedings, which was submitted as part of the transcript of the Rule 37 proceedings, and finds that the trial court questioned petitioner extensively concerning his understanding of the proceedings and his waiver of rights. Petitioner stated that he was pleading guilty because he was guilty and that he understood his rights.

(Order of Jan. 26, 1989, United States District Court for the Eastern District of Arkansas, at 7–8).

The district court also examined the findings that the state court made after conducting an evidentiary hearing on Ford's motion for post-conviction relief. The state court found that Ford's own testimony revealed that the sentencing range, the evidence, and the plea statement were all discussed by Ford and his counsel, and that Ford had the opportunity to talk with his mother. Furthermore, the state court stated that Ford pled guilty because, in Ford's own words, he wanted "[t]o take the easy way out." The state court concluded that "[t]here is no question that this gentleman knew exactly what sentence he was taking at the time. He knew what the deal was before he entered his plea, he did so intelligently and knowingly, and after having been informed by both counsel and Court." The district court correctly held that the state court factual determinations were entitled to a presumption of correctness under *Sumner v. Mata*, 449 U.S. 539, 544–47, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981), because it found that none of the circumstances enumerated in 28 U.S.C. § 2254(d) were shown to exist.

We are satisfied that the district court's factual determinations were not clearly erroneous. In light of this factual record, we believe that Ford's guilty plea represented "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). As the district court noted, since Ford was represented by counsel during the plea process and entered his plea upon counsel's advice, the voluntariness of the plea depends upon whether his counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). As will be discussed below, Ford's attorney fulfilled his obligation to his client with reasonable competence.

We consider Ford's claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) whether defendant has shown that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064; and (2) whether defendant has shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068. *See Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (adopting the *Strickland* test for challenges to guilty pleas based upon ineffective assistance of counsel).

When assessing the adequacy of Brown's representation of Ford, we must do so with a "highly deferential" view. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. The Supreme Court explains the need for this deferential review as follows:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

■ We are persuaded that Brown provided Ford with "reasonably effective assistance," as required by *Strickland.* 466 U.S. at 687, 104 S.Ct. at 2064. The district court found that Brown was convinced that Ford would be convicted if he proceeded to trial and would probably receive a term of five consecutive life sentences. In order for an inmate serving a life sentence for the felonies committed by Ford in 1982 to be considered for parole in Arkansas, the governor must commute the life sentence to a term for years. Ark.Code Ann. § 16–93–604(b)(1) (1987). Brown believed that Ford would be more likely to obtain executive clemency if he were sentenced to concurrent, rather than consecutive, terms and if there was no trial record detailing the circumstances of the crimes. Brown properly considered the "prospect of plea bargaining, the expectation or hope of a lesser sentence, [and] the convincing nature of the evidence against the accused," *Tollett v. Henderson,* 411 U.S. 258, 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), in reaching the difficult decision that, in his professional opinion, it was in Ford's best interest to plead guilty. Accordingly, we agree with the district court that this advice from Brown was within the wide range of competence demanded of attorneys in criminal cases.

Furthermore, an examination of the case law cited by Ford to support his position does not convince us that his counsel was ineffective. Ford relies heavily upon *Rinehart v. Brewer,* 561 F.2d 126 (8th Cir.1977), which held that the guilty plea of the fifteen year old defendant was not voluntary because of the age, inexperience, and communication difficulties of the defendant, and because his attorney failed to adequately explain the nature of the charge and the consequences of his plea. *Id.* at 131. We believe that *Rinehart* is factually distinguishable from this case because Ford's attorney adequately explained to him the consequences of his guilty pleas. The district court rejected the comparison to *Rinehart* because it credited Brown's testimony about explaining to Ford his options and parole considerations, and also because it found that the state court questioned Ford extensively concerning his understanding and waiver of his rights.

Ford's reliance upon *Todd v. Lockhart,* 490 F.2d 626 (8th Cir.1974) (per curiam), is also misplaced. The *Todd* court reversed and remanded for an evidentiary hearing because the record lacked specific testimony from which to determine whether the defendant's guilty plea was voluntarily and

intelligently given. *Id.* at 628. In stark contrast, Ford has had the benefit of extensive evidentiary hearings in both state and federal court on the issue of the voluntariness of his guilty plea.

Finally, Ford urges that his case is similar to *Thomas v. Lockhart,* 738 F.2d 304 (8th Cir.1984). In *Thomas,* the court held that the defendant's guilty plea was not voluntary and knowing because, among other reasons, his counsel failed to move for a continuance when the judge appeared to rush to a resolution of the case, and because his counsel impressed upon the accused and his family that a trial would be futile. *Id.* at 306–07. We reject this comparison. While Ford contends that he was coerced into pleading guilty because of time pressures, the record does not support this assertion. The state court found that Brown had represented Ford for at least four months before the pleas were entered and had discussed the case with Ford and his mother several times. As stated previously, these findings are entitled to a presumption of correctness. *Sumner,* 449 U.S. at 544–47, 101 S.Ct. at 767–69. Furthermore, unlike *Thomas,* the record reveals that Brown advised Ford on the consequences of proceeding to trial only after fully investigating his case. There is no suggestion in the record that Ford was coerced into a guilty plea by threats, misrepresentation, or improper promises. *See Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970).

Ford contends that he relied heavily upon his mother's advice throughout the plea process, as well as at other times, and that she had insisted that he not plead guilty. He claims that his mother was not aware of his guilty plea until after the plea was entered. This does not alter our conclusion that Ford's plea was voluntary and knowing. It was not necessary that his mother know of or acquiesce to his decision. Parental consent is not required in order for a minor to plead guilty in open court. *Shipman v. State,* 261 Ark. 559, 566, 550 S.W.2d 424, 428 (1977). As the Arkansas Supreme Court noted, Ford was examined by psychiatrists and determined to be competent. The court found that he "produced no evidence of incompetence or otherwise demonstrated that he was incapable of entering a competent plea of guilty without his mother's consent." Ford's argument is unavailing on this point.

## II.

In conclusion, we are convinced that Ford voluntarily, knowingly, and intelligently entered his plea of guilty after receiving effective assistance of counsel. Therefore, we affirm the district court.