William J. McCUEN *v.* STATE of Arkansas

CR 96-1228                                     941 S.W.2d 397

Supreme Court of Arkansas
Opinion delivered April 7, 1997

48

*John Wesley Hall, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly K. Hill*, Deputy Att'y Gen., and *Todd Newton*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant William J. McCuen appeals from a denial of a petition to vacate his sentence and from a denial of his motion to correct an illegal sentence. He argues multiple points on appeal, none of which, we conclude, has merit. We affirm the orders of the trial court.

On December 18, 1995, McCuen was charged with two counts of public servant bribery (Ark. Code Ann. § 5-52-103 (Repl. 1993)), one count of tax evasion (Ark. Code Ann. § 26-18-201 (Repl. 1992)), one count of accepting gratuities and kickbacks (Ark. Code Ann. § 19-11-707 (Repl. 1994)), and one misdemeanor count of trading in public office (Ark. Code Ann. § 5-52-101 (Repl. 1993)). The first count of public servant bribery involved a scheme for profit by awarding a contract to sell flags to the State. The second public servant bribery count concerned permitting Copy Services, a business in which McCuen had an interest, access to U.C.C. filings in exchange for compensation. The tax-evasion count involved the failure to pay taxes on the income from the Copy Services arrangement. The gratuities and kickbacks count stemmed from McCuen's receipt of kickbacks from Business Records Corporation and M.C. Supply in exchange for state contracts. The trading-in-public-office count dealt with McCuen's acceptance of benefits in exchange for agreeing to hire Madison W. Wilson, Jr., and/or William T. Finnegan as State employees.

On January 5, 1996, McCuen entered negotiated guilty pleas. Prior to entering the pleas, the trial court explained that McCuen could be sentenced to a maximum of 27 years and $40,000 for the crimes charged. McCuen stated at the time of his pleas that he had discussed the pleas with his attorneys, that he understood what he was doing, and that he was satisfied with the representation of his attorneys. The trial court explained to McCuen the rights that he was waiving by entering a guilty plea. McCuen stated that he had a masters degree and understood the

plea statement. He denied being under the influence of alcohol or drugs.

At that point, the prosecuting attorney read into the record the supporting facts behind each of the charges. Following the reading of the supporting facts relating to public servant bribery in connection with the flag sale, counsel for McCuen, Q. Byrum Hurst, responded that the State could meet its burden in satisfying the elements of the crime. McCuen then stated that he was in fact guilty of the offense. The trial court accepted the plea to the first count and asked the prosecutor to tell the court about the second count. After reading the supporting facts relating to the sale of the U.C.C. filings, McCuen stated that he was guilty of this count of public servant bribery as well. On the third count of tax evasion connected to the U.C.C. filings, McCuen also admitted receiving income from the Copy Services operation, and he again pled guilty. The prosecuting attorney next described the facts of the fourth count relating to receipt of gratuities and kickbacks. McCuen again stated that he was guilty of this offense. The court then asked about the basis of the final count concerning trading in public office. McCuen pled no contest to this charge. A plea statement, which was dated January 5, 1996, was signed by McCuen and reflected that he understood he could receive the maximum sentence for each of the crimes to which he had pled guilty. The trial court requested a presentence report.

Throughout the hearing on the entry of the guilty pleas, McCuen was represented by counsel — Darrell F. Brown and Q. Byrum Hurst. Following the guilty pleas, the date of the sentencing hearing was discussed. Darrell Brown expressed concern over a conflict he had with another trial and asked that the sentencing hearing be set in late March 1996 due to his impending trial. The trial court suggested that such a long delay was not warranted, but the court stated that it would consider subsequent motions.

Thereafter, McCuen filed a motion for continuance, which was addressed at a hearing on February 22, 1996. Counsel Darrell Brown complained that he had only recently seen the pre-sentence report and that it had some problems. He stated that he needed additional time to address those problems. The trial court

granted the continuance, and the sentencing hearing was set for April 29, 1996.

On April 24, 1996, McCuen filed a motion *in limine* which restated the terms of the negotiated plea agreement entered into on January 5, 1996, and which included a provision that the prosecuting attorney would offer no comments to the judge which would in any way affect the sentence. McCuen complained in the motion *in limine* that the State had indicated that it wanted a harsher sentence than that provided in the guidelines. For example, McCuen contended that the State had said in its response to an objection to the presentence report that it wanted to call its own witnesses at the sentencing hearing, and he complained that this would violate the plea agreement. He requested that the trial court enforce the plea agreement by issuing an order directing the prosecuting attorney to remain silent during the sentencing hearing and call no witnesses.

At the sentencing hearing on April 29, 1996, McCuen was represented by Q. Byrum Hurst and Robert Scull, III. The trial court first addressed another motion by McCuen asking for a continuance of the sentencing until counsel Darrell Brown could be present. Counsel Hurst explained that he agreed to associate with Darrell Brown in his representation of McCuen on a limited basis because of a potential conflict of interest that Brown had due to another trial. The State objected to the continuance because it had been nearly four months since the pleas had been entered. The prosecutor explained that he had had extensive discussions in the case with counsel Robert Scull, who was representing McCuen on behalf of Darrell Brown. The trial court denied the continuance motion and instructed the parties to proceed. The prosecuting attorney ultimately agreed to remain silent on the sentencing issue.

Counsel Hurst began by urging the court to use the sentencing guidelines. He then tracked McCuen's work history which, Hurst maintained, demonstrated his life-long devotion to serving others. He next called a pre-sentence officer, James Shaw, to testify. Shaw agreed that the purpose of the sentencing grid was to make sentences more uniform across the state. He also agreed that

without departure, none of the crimes charged would warrant prison time under the sentencing grid. Hurst then explored McCuen's qualifications that militated in favor of alternative sanctions such as community service and probation. The State asked no questions. Hurst next called three witnesses in mitigation who testified to McCuen's reputation for truthfulness and honesty, his public service and personal sacrifice, and his honesty in business dealings. In his concluding remarks, Hurst asked the trial court to consider a letter written on McCuen's behalf from the Chief of Police of Hot Springs in which the police chief asked the court to give McCuen probation.

The State announced that it was ready for the sentence to be imposed. At that time, the trial court asked Hurst if he knew of any reason why sentence should not be imposed. Hurst stated that he did not, except for motions previously made. The trial court then asked: "Anything further from the Defense before sentencing in this matter?" After there was no response, the trial court imposed McCuen's sentence: six years and a $10,000 fine on counts one and two (the bribery counts); three years on count three (the tax-evasion count); five years and a $10,000 fine on count four (the kickback count), and a $1,000 fine on count five (trading in public office). Counts one, two, and four were to run consecutively. Total prison time was 17 years and total fines were $30,000. After sentencing, Hurst asked the court to give McCuen thirty days so that he could get his affairs in order. The court denied the request.

On May 1, 1996, the judgment and commitment order was filed, reflecting McCuen's 17-year sentence.[1] The trial court's departure report dated April 29, 1996, was also filed that same date, and it showed that the trial court had circled as aggravating factors (1) the offense was a major economic offense established by multiple incidents (underlined), (2) degree of sophistication or time (underlined), and (3) misuse of fiduciary duty (underlined). The trial court also circled "other" as an aggravating factor, and the following was typed in the space provided: "Defendant com-

---

[1] The fines are not mentioned in the judgment and commitment order.

mitted multiple major offenses as an elected State Executive Officer and sentencing guidelines are clearly too lenient."

On May 3, 1996, McCuen filed a Petition to Vacate Sentence and Allow Withdrawal of Plea. The basis for his petition was that his primary counsel, Darrell Brown, was unable to attend the sentencing hearing and that a requested continuance had been denied. McCuen further asserted that the trial court was informed that his other attorney, Q. Byrum Hurst, "would likely be a prosecution witness in this matter if a trial becomes necessary" and, thus, had a conflict of interest.[2] The petition asserted that Hurst had been contacted about an investigation into the prosecutor's office. McCuen also contended that Robert L. Scull had appeared at the sentencing hearing in place of Darrell Brown and that Scull advised McCuen, pursuant to Brown's instructions, to withdraw his plea, but Hurst advised McCuen to accept the plea despite having a conflict of interest. McCuen additionally alleged that Hurst's conflict of interest rendered him ineffective as McCuen's counsel at the sentencing hearing. Thus, the plea was involuntary, according to McCuen, because he had not been fully informed of the circumstances. He sought relief under Arkansas Rules of Criminal Procedure 37.1 (postconviction relief) and 26.1 (withdrawal of guilty plea). He alleged that he was denied due process due to Hurst's ineffectiveness and that his sentence was illegal on its face and illegally imposed. The petition was signed by Darrell Brown.

In an order denying the petition, the trial court first recited the history of the case. Because the sentence had been placed into execution, the trial court considered the petition to be only one for postconviction relief under Ark. R. Crim. P. 37 and not one for withdrawal of a guilty plea under Ark. R. Crim. P. 26.1. The trial court observed that the pleas were entered by McCuen in the presence of his attorneys, Brown and Hurst, and he was represented at the sentencing hearing by Hurst and Scull.

With regard to Hurst's apparent conflict of interest, the trial court stated in the order that there was never any request by

---

[2] The nature of what Hurst's testimony might be is unclear from the record.

McCuen for Hurst to be removed, to withdraw, or to be relieved as counsel for McCuen even though McCuen was aware of the alleged potential conflict. The court further observed that McCuen had already entered his guilty plea and that the State complied with the negotiated agreement at the sentencing hearing. The court noted that there was no argument or indication that the pleas entered on January 5, 1996, were anything but knowing, intelligent, and voluntary pleas made with the assistance of attorneys Brown and Hurst. Based on these factors, the trial court denied the petition.

On July 23, 1996, McCuen filed a *pro se* motion entitled Motion to Correct Illegal Sentences Imposed in an Illegal Manner. The first ground for the motion was an alleged error by the trial court when it departed upward from the sentencing guidelines. McCuen also complained that the trial court erred by using an element of the crimes — public service — as an aggravator. He further stated that he was denied his right to allocution prior to sentencing, and, accordingly, he was denied the opportunity at the allocution stage to withdraw his guilty plea and request a trial. McCuen contended, as another issue, that the trial court failed to inquire adequately into Hurst's conflict of interest. He urged that if the trial court had so inquired, he would have told the court that the F.B.I. requested Hurst to wear a body microphone when he met with the prosecuting attorney, Mark Stodola. After consulting with McCuen, Hurst did not wear a body microphone. It was McCuen's contention that Hurst told the prosecuting attorney that McCuen had information that was damaging to him. This was passed on to the trial court "in private" at one of the hearings.

In addition, McCuen alleged that Hurst told him that he would get probation because the trial court had told Hurst that McCuen was not going to be treated differently from anyone else. He also complained about Hurst's failure to object to the denial of allocution. He contended, in addition, that he would not have entered the pleas if his attorneys ·had properly investigated and informed him that there were, in fact, no Federal charges pending. McCuen also accused the trial court of encouraging him to plead guilty by trickery because, according to McCuen, the trial court made it known to his counsel that he would receive probation if

he did not withdraw his pleas. McCuen prayed that the trial court resentence him in accordance with the sentencing guidelines and without departure.

In an order entered on August 9, 1996, the trial court refused to reach the merits of the petition to correct an illegal sentence for the reason that McCuen was not entitled to file a second petition for postconviction relief. McCuen appealed from the denials of his two postconviction motions.

## I. Effective Counsel For Withdrawal of Guilty Plea

McCuen first contends that he was entitled to effective counsel for purposes of withdrawing his guilty plea. He primarily contends that his trial counsel was ineffective by not including in his Petition to Vacate Sentence and to Allow Withdrawal of Plea all of the issues supporting the petition.

■ ■ Arkansas Rule of Criminal Procedure 26.1 sets the procedure for withdrawal of guilty pleas and reads in pertinent part:

> (a) Prior to pronouncement of sentence, the court shall allow a defendant to withdraw his plea of guilty or nolo contendere upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice.

Rule 26.1 has been interpreted by this court to mean that a motion to withdraw a plea of guilty is untimely after the sentence is placed into execution. *Rowe v. State*, 318 Ark. 25, 883 S.W.2d 804 (1994); *Malone v. State*, 294 Ark. 376, 742 S.W.2d 945 (1988); *Travis v. State*, 286 Ark. 26, 688 S.W.2d 935 (1985). We have further stated that the trial court loses jurisdiction to set aside a guilty plea once it has been accepted and the sentencing has been completed. *Scalco v. City of Russellville*, 318 Ark. 65, 883 S.W.2d 813 (1994).

McCuen, nevertheless, argues that the petition to withdraw his guilty plea to correct a manifest injustice under Ark. R. Crim. P. 26.1(b) and (c) may be entertained after judgment is entered. Those subsections read in part as follows:

(b) A motion to withdraw a plea of guilty or nolo contendere to correct a manifest injustice is timely if, upon consideration of the nature of the allegations of the motion, the court determines that it is made with due diligence. Such motion is not barred because it is made after the entry of judgment upon the plea. If the defendant is allowed to withdraw his plea after judgment has been entered, the court shall set aside the judgment and the plea.

(c) Withdrawal of a plea of guilty or nolo contendere shall be deemed to be necessary to correct a manifest injustice if the defendant proves to the satisfaction of the court that:

(i) he was denied the effective assistance of counsel;

■ The trial court correctly ruled that McCuen could not withdraw his guilty pleas under Rule 26.1 because sentencing had already transpired and judgment entered at the time the petition to vacate was filed. As a consequence, the petition was untimely. After sentencing, such a petition could be treated as one for postconviction relief under Rule 37, regardless of its title, and this court has so held. *See Rowe v. State, supra; Garmon v. State,* 290 Ark. 371, 719 S.W.2d 699 (1986); *Travis v. State, supra; Shipman v. State,* 261 Ark. 559, 550 S.W.2d 424 (1977). The trial court was, therefore, correct in treating the petition to vacate as one for postconviction relief.

■ But even considering McCuen's petition to vacate to be one for relief under Rule 37, the United States Supreme Court has held that there is no constitutional right to an attorney in state postconviction proceedings, and, as a result, there is no corresponding right to claim constitutionally ineffective assistance of counsel in those proceedings. *Coleman v. Thompson,* 501 U.S. 722, 752 (1991). Similarly, this court has held that the right to counsel ends in Arkansas after the direct appeal of the original criminal trial is completed, and the State is not obligated to provide counsel in postconviction proceedings. *Fretwell v. State,* 290 Ark. 221, 718 S.W.2d 109 (1986) (per curiam). Our reasoning has been that a postconviction proceeding is civil in nature and, thus, there is no constitutional right to appointment of counsel as part of a criminal proceeding. *Id.*

■ In sum, McCuen's petition to withdraw his guilty pleas was untimely. Furthermore, he was not entitled to counsel to represent him for purposes of his Rule 37 petition. Hence, even assuming his counsel was ineffective in failing to include all grounds for relief in his Rule 37 petition, this is not a basis upon which his pleas can be vacated. *Coleman v. Thompson, supra.*

## II.   Counsel With Conflict of Interest Rendered Guilty Pleas Ineffective

McCuen next argues that the trial court should have allowed him to withdraw his guilty pleas because they were tainted and ineffective due to his lawyer's conflict of interest. This argument was first raised on May 3, 1996, in McCuen's Petition to Vacate Sentence and to Allow Withdrawal of Plea. The purported conflict was that counsel Hurst had information that apparently had to do with the prosecuting attorney's negotiation tactics. The information supposedly stemmed from an F.B.I. investigation into the prosecutor's office, and the asserted conflict was that Hurst would likely have to testify for the prosecution if the matter went to trial. Why Hurst would be a likely prosecution witness is not altogether clear in McCuen's petition.

Again, in its order denying Rule 37 relief, the trial court noted that the guilty plea to each count was made by McCuen in the presence of his attorneys, Brown and Hurst, on January 5, 1996. The trial court further noted that there was no argument or indication that the pleas entered were anything but knowing, intelligent, and voluntary pleas made with the assistance of his counsel. McCuen stated when he entered his pleas that he was satisfied with his lawyers. Moreover, at the sentencing hearing McCuen was represented by counsel Hurst and Scull. The trial court observed that there was never a request for Hurst to be removed or to withdraw or to be relieved as counsel even though McCuen was aware of the circumstances of the alleged conflict. Comparable factors were deemed significant by the United States Supreme Court when it refused to vacate a guilty plea based on an alleged conflict of interest on the part of defendant's counsel in *Dukes v. Warden,* 406 U.S. 250 (1971).

■  We agree that McCuen was entitled to effective assistance of counsel when he entered his guilty plea. However, in a case similar to the instant case, we set forth the applicable law regarding effectiveness of counsel in the context of a guilty plea:

> The sole issue presented on appeal is whether trial counsel was ineffective and thereby prevented the appellant from intelligently and voluntarily entering the guilty plea. We stated in *Huff v. State*, 289 Ark. 404, 711 S.W.2d 801 (1986), that "[w]hen a guilty plea is challenged, as here, the sole issue is whether the plea was intelligently and voluntarily entered with the advice of competent counsel." See *Williams v. State*, 273 Ark. 371, 620 S.W.2d 277 (1981). Specific errors on the part of the trial attorney are to be evaluated under the *Strickland v. Washington*, 466 U.S. 668 (1984), standard. *Strickland* requires the petitioner to demonstrate both that the defense counsel was not functioning as guaranteed by the Sixth Amendment and that his deficient performance resulted in depriving the petitioner of a fair trial. The burden upon the petitioner in such a case is extremely heavy. *Crockett v. State*, 282 Ark. 582, 669 S.W.2d 896 (1984).

*Stobaugh v. State*, 298 Ark. 577, 579-80, 769 S.W.2d 26, 27 (1989).

■  The standard of reviewing an attorney's conduct under *Strickland v. Washington, supra,* has often been stated. First, counsel is presumed to be competent; thus, to prevail on an argument of ineffective assistance of counsel, the appellant must show that his attorney's performance fell below the objective standard of competence and that but for those errors, there is a reasonable probability that the outcome of the trial would have been different. *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995). This court has further stated that prejudice will be presumed from a conflict of interest only when the defendant shows that his attorney "actively represented conflicting interests and that actual conflict of interest adversely affected his lawyer's performance." *Johnson v. State*, 321 Ark. at 123, 900 S.W.2d at 944. The burden is on the appellant to prove both prongs of this test. *Id.* In *Johnson v. State*, we rejected the defendant's arguments because he did not prove that any alleged conflict had a "real and demonstrable effect on [his attorney's] performance." *Johnson v. State*, 321 Ark. at 124, 900 S.W.2d at 944.

McCuen questions Hurst's loyalty to his defense and ultimately his competency because Hurst was asked to wear a body microphone for the F.B.I. in plea negotiations with the prosecuting attorney. He was not asked to wear a body microphone to gain evidence against McCuen, however. Rather, the wire was apparently intended to secure evidence against the prosecuting attorney. Thus, even if McCuen's assertions are accepted at face value, there is no indication that Hurst's interests were adverse to his client's. In addition, the record is clear that McCuen knew of these circumstances but requested no relief. Finally, Hurst never actually wore the body microphone according to his motion to correct an illegal sentence.[3] Thus, we conclude, as was the case in *Johnson v. State, supra,* that McCuen has not shown that the asserted conflict of interest had any real effect on Hurst's performance as defense counsel for McCuen. *See also Dukes v. Warden, supra* (denying relief because defendant did not show that alleged conflict by his lawyer's representation of two girls and the defendant in an unrelated criminal case affected his plea). Furthermore, Darrell Brown was present as co-counsel for McCuen when the plea was entered on January 5, 1996, and Robert Scull was present as co-counsel for the sentencing.

We affirm the trial court in denying relief on this point.

### III.    Petition to Correct Illegal Sentences

McCuen raises two additional points that were first argued to the trial court in his motion to correct sentences imposed in an illegal manner: (1) use of an element of the offense as an aggravating circumstance for departure purposes; and (2) denial of his right to allocution. The State, in response, submits that the trial court was correct in not addressing the issues raised in a second petition for relief because a second postconviction petition is precluded by Rule 37.2. We agree. Rule 37.2(b) reads:

> *All grounds* for relief available to a petitioner under this rule must be raised in his or her *original petition* unless the petition was

---

[3] McCuen's counsel on appeal writes that Hurst did wear the body microphone. This contention is at odds with McCuen's own motion to correct sentences imposed in an illegal manner which was signed by him.

> denied without prejudice. Any ground not so raised or any ground finally adjudicated or intelligently and understandingly waived in the proceedings which resulted in the conviction or sentence, or in any other proceedings that the petitioner may have taken to secure relief from his or her conviction or sentence, may not be the basis for a subsequent petition. *All grounds* for post-conviction relief from a sentence imposed by circuit court, including claims that a sentence is illegal or was illegally imposed, must be raised in a petition under this rule. (Emphasis ours.)

The rule is clear, and this court has consistently upheld the rule that a petitioner is limited to one petition for postconviction relief unless the first petition was specifically denied without prejudice to allow the filing of a second petition. *See, e.g., James v. State,* 289 Ark. 560, 712 S.W.2d 919 (1986) (decided under old Rule 37.2(b) which contained comparable language to correct Rule 37.2(b)). There is nothing in the order denying McCuen's first petition for postconviction relief to suggest that it was entered without prejudice. The trial court was correct in declining to consider these issues on procedural grounds.

Affirmed.