**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 95-4123

Rubin R. Weeks,            *
                                  *

           Appellant,       *

                                  *    Appeal from the United States

    v.                            *    District Court for the

                                  *    Eastern District of Missouri.

Mike Bowersox,          *

                                  *

           Appellee.        *

_____

Submitted:  April 15, 1997
Filed: July 24, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, MAGILL,
     McMILLIAN, FAGG, BOWMAN, WOLLMAN, BEAM, LOKEN, HANSEN,
     MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, en banc.

_____

MAGILL, Circuit Judge.

Robin Weeks pled guilty in Missouri state court to charges of kidnaping and rape and was sentenced to concurrent terms of thirty years and life imprisonment. Although Weeks defaulted his postconviction relief and was denied collateral relief in the Missouri state court, Weeks petitioned for federal habeas relief in the

district court.[1]

---

[1]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

The district court denied relief to Weeks without an evidentiary hearing, holding that Weeks defaulted on his federal habeas claims by failing to make a timely petition to the Missouri state court for postconviction relief. The district court also held that Weeks had shown neither cause and prejudice for his default nor actual innocence of the kidnaping and rape charge. Weeks appeals, arguing that his actual innocence entitles him to an evidentiary hearing. Weeks asserts that he has made the requisite showing for a hearing on his defaulted federal claims. First, Weeks maintains that he has shown evidence of his actual innocence. Second, Weeks asserts that, in the absence of evidence, his allegation that he is actually innocent, coupled with his unsupported claim that he could produce evidence of his innocence, is sufficient. Third, Weeks argues that, even if he has not established his actual innocence, his assertions that exculpatory evidence exists are sufficient to entitle him to a hearing at which he could develop evidence of his actual innocence. We affirm.[2]

## I.

Shortly after midnight on October 13, 1991, Ms. Jolynn Alicia [Doe], a young woman who was then twenty-one years of age, was driving home through Cape Girardeau, Missouri, from her place of work. Weeks, an illiterate thirty-year-old ex-convict, had seen [Ms. Doe] at her place of employment

---

[2]A panel of this Court reversed the decision of the district court and remanded. Weeks v. Bowersox, 106 F.3d 248, 251-52 (8th Cir. 1997) (opinion vacated upon rehearing en banc).

and had followed her as she was driving home . . . . As [Weeks] was driving behind her, he flashed his lights seven or eight times which caused her to pull over. She had her doors locked and her windows rolled up. He came up to the side of the car and had indicated to her that there was some trouble with a back taillight or some part of the back of her car. She rolled down her

window enough to hear what he was saying, and the next thing she knew a hand with a butcher-type knife had come in and was slashing at her hands, which were on top of the steering wheel and cut her hands. [Weeks] then was able to get the door open; [he] took her out of the car; took her to his car, and started driving with her towards Bollinger County. While they were still in Cape [Girardeau] County, [Weeks] ordered her to take off her clothes, which she removed from the lower part of her body. [Weeks] then performed an act of sodomy by putting his finger in her vagina while they were still in Cape Girardeau County and while he had the knife there under his leg as he was driving the car. She saw [Weeks] cross the Bollinger County line into Bollinger County, and in Bollinger County they continued to a farm, where he took her near a barn and raped her on a blanket and also performed various types of sodomy at that time too. . . . [Weeks then] went and took his belt and stood over her with his belt in his hands. [Ms. Doe] felt that [Weeks] was considering strangling her. [Ms. Doe] felt that she was about to die. Instead [Weeks] went to his car and got duct tape by which he used to tie her ankles and her knees and her hands, and he left her tied there in Bollinger County and [then Weeks] drove off. [Ms. Doe] was able to get free and ultimately got to the authorities.

Tr. of Plea of Guilty & Sentence (Feb. 13, 1992) at 23-25, reprinted in Resp't's Ex. F at 23-25 (description of crimes by prosecutor).

Weeks was subsequently arrested in Mississippi and extradited to Missouri. After returning to Missouri, Weeks was charged with the kidnaping and rape of Ms. Doe.

On February 13, 1992, Weeks pled guilty in Missouri state court to the charges.  Weeks's counsel explained to the state trial court that, pursuant to a plea agreement and in response to Weeks's guilty plea,

> the State has agreed to dismiss . . . all the charges except the two to which we have pled, the kidnaping and the rape.  [The state prosecutors] have also agreed that whatever sentence you impose on those two charges shall run concurrently.  They have also agreed and they have produced records

which support their position that if they would file as a Class X offender, it would increase the further time before he could be considered for parole to eighty percent. They have declined to do that upon a valid plea to our charges. So you have the discretion to sentence him from five years to thirty in one case, from ten to life on another case, but you are to run them concurrently as a prior and persistent offender.

Id. at 16, reprinted in Resp't's Ex. F at 16 (statement by defense counsel). When asked by the trial court if he understood the plea agreement, Weeks responded, "Yes." Id. at 17.

Weeks's attorney also explained that Weeks pled guilty

because I have advised him concerning the law, that [the plea agreement] gives him some opportunity for parole at some date in the future, albeit it could be a far date. My advice to him was we didn't think by going to trial the other way, that he has the realistic opportunity that he would be able to receive probation in light of the amount of charges that were B and A felonies. So he has never maintained--he has given confessions to the charges and he has admitted his involvement, and he feels this is the best of the choices he has.

Id. at 20-21, reprinted in Resp't's Ex. F at 20-21 (statement of defense counsel). Weeks agreed that his counsel's statement was accurate. See id.

At the plea hearing, Weeks admitted that he kidnaped

and raped Ms. Doe:

Q.  [by The Court] Mr. Weeks, I'll ask you a number of questions this afternoon about your desire to enter pleas of guilty.  If at any time you do not understand my questions, interrupt me and let me know that, and I'll explain the questions further.  Okay?

A.  [by the defendant] Yes, sir.

Q.  First of all, will all of your answers to my
    questions be truthful?

A.  Yes, sir.

Q.  Has anyone told you not to tell the truth?

A.  No, sir.

    . . . .

Q.  Did Mr. Robbins [Weeks's defense counsel]
    read the Petitions to you?

A.  Yes, sir.

Q.  And did he go over the Petitions with you?

A.  Yes, sir.

Q.  Did he explain the contents of the Petitions
to you?

A.  Yes, sir.

Q.  Do you understand the contents of the Petitions?

A.  Yes, sir.

Q.  Is there anything in here that you do not
    understand?

A.  No, sir.

Q.  Let me ask you about these charges.  First,
    from the Cape Girardeau County case.

    MR. SWINGLE [the prosecutor]: Your Honor, in
    the Cape Girardeau County case, he is
    pleading to Count I, which is

kidnaping, and in the Bollinger County case, he is pleading to Count II, which is rape.

Q. Okay, in Count I, did you on October 13 of last year unlawfully remove Jolynn Alicia [Doe], without her consent, from her car on County Road 350, which was about approximately 150 yards from the intersection of County Road 350 and Highway 72?

A. Yes.

. . . .

Q. Let me ask you, on Count II, on the Bollinger County case, did you also on October 13th of last year, and that would be in Bollinger County, whereas the other was in Cape [Girardeau] County, in Bollinger County did you have sexual intercourse with Jolynn Alicia [Doe]?

A. Yes.

Q. And was that without her consent?

A. Yes.

Q. Did you use force?

A. Yes.

Q. And did you also display a deadly weapon in a threatening manner?

A. Yes.

Q. What was that weapon?

A.  A knife.

-10-

Q. A knife, okay. Well, what did you do? Tell me in your own words what happened about these two crimes, one in Cape Girardeau County and one in Bollinger County, that makes you think you are guilty?

A. Because I am guilty.

Q. I understand, but tell me in your own words what happened on these two charges that makes you think that you are guilty of the crime?

A. Because I did what they said I did.

Q. So everything in those charges is true and correct?

A. Yes.

Q. No question about that?

A. No, sir.

Id. at 2-6, reprinted in Resp't's Ex. F at 2-6 (emphasis added).[3]

Weeks also agreed that his plea was voluntary:

Q. [By the Court] Now, have any other promises

---

[3]Ms. Doe also spoke at Weeks's plea hearing, stating that "[e]ver since this man [Weeks] kidnapped me and raped me, I haven't been able to live my life--(crying, not audible). I'm afraid every day of my life. I can't drive my vehicle without constantly looking at my rear-view mirror. I'm afraid that this is going to happen again. I can't trust anybody, and I'm afraid to be by myself. It has just affected my life so much." Tr. of Plea of Guilty & Sentence (Feb. 13, 1992) at 25, reprinted in Resp't's Ex. F at 25.

been made by anyone to get you to plead
guilty?

```
A.   [By the defendant] No, sir.

Q.   Has anyone forced you or threatened you in
     any way to get you to plead guilty?

A.   No, sir.

Q.   Is your mind clear today?

A.   Yes.
```

Id. at 17-18, reprinted in Resp't's Ex. F at 17-18.[4]

---

[4]The Missouri state court ascertained that, although Weeks received prescription medications for various health problems, these medications did not effect Weeks's ability to understand and to voluntarily enter his guilty plea:

Q.   [by the Court] Have you had any drugs or alcohol in the last four days other than your insulin medication?

A.   [by the defendant] Yes.

Q.   What other drugs have you been taking?

MR. ROBBINS [defense counsel]: Judge, I can give you a report, if I can find it.

. . . .

MR. ROBBINS: Judge, we have--I have received a copy of a report from Fulton State Hospital, and according to this, dated January 28th, he was placed on Prozac, which is for depression. He was also placed on something called Mevacor. He was also placed on Diphenhydramine, according to the report I received. I don't know if he is getting those, but he was placed on those.

Q.   Are you getting all of those drugs now?

-14-

A.     I was under the Sheriff's care over her at Cape.

       MR. ROBBINS: And he gets insulin injections.

Q.     I know you have insulin too.

       MR. ROBBINS: Judge, some of those are for triglycerides, which is cholesterol things, one for depression; the Diphenhydramine is a medication for sleep; the Mevacor had to do with blood triglycerides.

Q.     You've got a number of health conditions, don't you?

A.     Yes.

Q.     Well, let me ask you this, are any of those medications affecting your willingness to plead guilty today?

A.     No, sir.

Q.     Is there any effect on you at all other than to help you feel better?

A.     No, sir.

       THE COURT: Do you agree with that, Mr. Robbins? To your knowledge, are any of those drugs causing any adverse effects that might cause him to be entering a plea against his will?

       MR. ROBBINS: Judge, I don't know what the medications exactly do, but I have talked to him on several, several, several occasions about this. While he may not be pleased with the situation, he seems to comprehend, has no question about what could happen. We have been over this multiple times. I think he understands. He is not happy about it, but I think he understands.

Q.     I just want to make sure, Mr. Weeks, because you are taking these

medications, that for some reason they cause you to be pleading guilty even though you don't want to be pleading guilty, even though you don't want to; so are you telling me they don't have any effect on you about your willingness to plead guilty?

A. No, sir.

Q. They don't have any effect at all then?

A. No, sir.

MR. SWINGLE [the prosecutor]: May I ask a couple additional question, Your Honor?

THE COURT: Yes.

MR. SWINGLE: Do you feel clear-headed today?

THE DEFENDANT: Drowsy, but I'm clear-headed.

MR. SWINGLE: Do you feel you are able to hear and understand what is being said here?

THE DEFENDANT: Yes.

THE COURT: And you know what you're doing?

THE DEFENDANT: Yes.

THE COURT: No question about that?

THE DEFENDANT: No.

THE COURT: You are sure this is what you want to do, Mr. Weeks?

-16-

THE DEFENDANT: <u>Yes.</u>

Tr. of Plea of Guilty & Sentence at 18-20, <u>reprinted in</u> Resp't's Ex. F at 18-20 (emphasis added).

At the sentencing phase of Weeks's hearing, Weeks's attorney argued strongly that Weeks should receive a sentence of a determinate number of years, rather than a life sentence.  Weeks's counsel stated:

> I'm not trying in any way to diminish the fact that the young lady was assaulted, and I'm sure it has affected her, and I don't want it to do that; however, my obligation is to Mr. Weeks. His life is also, maybe not ended, but certainly has been changed.  Judge, we are going to ask that you impose a sentence, not a life sentence but a term of years. . . . [I]f you choose the thirty year period, sixty percent of thirty years is eighteen years before he is even eligible to be released.  Judge, this has been a difficult situation for everybody concerned. [Weeks] also because he has health problems. The problems are obvious.  There is some speculation that his life expectancy is not that long.  He has a wife and he has children himself.  I believe that the reason he is choosing this, he has hopes if he beats the odds, so to speak, that he at least will have the opportunity to see them, to be with them some portion of his life. . . . This is not a murder case. . . .  The lady was harmed but she is alive.  She is here today; she is testifying. . . . [Weeks's pleading guilty] has saved this young lady a lot of trauma; he has saved the State the burden of going through the trial procedures . . . .

Id. at 27-28, reprinted in Resp't's Ex. F at 27-28.

Noting the emotional and physical trauma suffered by Weeks's victim, and the brutality and premeditation of Weeks's crimes, the Missouri state prosecutors asked that

Weeks be given a life sentence.  The Missouri state court
entered a judgment of

guilty against Weeks and sentenced him to thirty years imprisonment for kidnaping Ms. Doe, and a concurrent term of life imprisonment for raping Ms. Doe.

Following sentencing, the state court told Weeks about the availability of postconviction relief under Missouri Supreme Court Rule 24.035.[5]  This rule requires a prisoner seeking postconviction relief to file a motion requesting the court to vacate the guilty plea.  The

_____

[5]In pertinent part, Rule 24.035(a) provides:

> A person convicted of a felony on a plea of guilty and delivered to the custody of the department of corrections who claims that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States . . . may seek relief in the sentencing court pursuant to the provisions of this Rule 24.035.  <u>This Rule 24.035 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated</u>. . . .

Mo. S. Ct. R. 24.035(a) (emphasis added).  Rule 24.035(b) provides:

> A person seeking relief pursuant to this Rule 24.035 shall file a motion to vacate, set aside or correct the judgment or sentence substantially in the form of Criminal Procedure Form No. 40. . . . If an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within ninety days after the date the mandate of the appellate court is issued.  If no appeal of such judgment was taken, the motion shall be filed within ninety days of the date the person is delivered to the custody of the department of corrections.  <u>Failure to file a motion within the time provided by this Rule 24.035 shall constitute a complete waiver of any right to proceed under this Rule 24.035 and a complete waiver of any claim that could be raised in a motion filed pursuant to this Rule 24.035.</u>

Mo. S. Ct. R. 24.035(b) (emphasis added).

-20-

court presented Weeks with the standard form for making such a motion, read the form to him, and instructed Weeks's lawyer to explain it to him.  The

court did not, however, specifically inform Weeks that the rule requires the form to be filed within ninety days after the entry of his plea.

Weeks did not appeal his sentence. In addition, Weeks, who was not represented by counsel after trial, never filed a Rule 24.035 postconviction motion to set aside his conviction and sentence. In Missouri, such a motion is the exclusive remedy to challenge a guilty plea. See Mo. S. Ct. R. 23.035(a). Having forfeited his postconviction relief and direct appeal, Weeks pursued state collateral review. The Missouri state court dismissed Weeks's state habeas petition because he had not filed a Rule 24.035 motion. See Order (Oct. 6, 1994), reprinted in Resp't's Ex. K.

On September 13, 1994, Weeks, proceeding in forma pauperis, filed a federal habeas petition in the United States District Court for the Eastern District of Missouri. Weeks raised the following claims in his petition: (1) that Weeks was unlawfully arrested in Mississippi and transported to Missouri without an extradition hearing; (2) that Weeks's guilty plea in state court was involuntary; (3) that Weeks was never arraigned on the rape charge; (4) that Weeks was improperly charged as a prior offender; and (5) that Weeks was denied the right to present evidence and to present a defense. The State of Missouri responded by arguing that Weeks had failed to exhaust state remedies and, in a subsequent supplementary response, that Weeks had procedurally defaulted his claims by failing to file a Rule 24.035 motion in Missouri state court.

In the following months, Weeks filed a flurry of motions with the district court. On October 7, 1994, Weeks filed a motion to appear before the court for an immediate hearing, a motion to compel, and a motion for the appointment of counsel. Weeks made a number of allegations within his filings, including that he had not pled guilty in state court; that while in Missouri state custody prior to the state court plea hearing Weeks was beaten by prison officers, denied medical attention for a head injury, and given a shot that had him "out of his head"; that Weeks had a romance with a prison

nurse; and that there are seven eyewitnesses who would testify that Weeks was not in the State of Missouri when Ms. Doe was kidnaped and raped.

On October 17, 1994, Weeks filed a traverse titled "Motion to Reply to Show Why an Evidentiary Hearing and Appointment of Counsel and Writ of Habeas Corpus Should be Granted." In this filing, Weeks listed the names of twenty-seven witnesses that Weeks asserted he could call. Weeks also challenged Ms. Doe's identification of Weeks as the kidnapper and rapist, and Weeks revealed that he had numerous civil actions pending against the officers who allegedly beat Weeks.

On April 12, 1995, the district court denied Weeks's motion to compel, noting that Weeks did not identify what he wanted compelled. The district court also denied Weeks's motions for a hearing and for the appointment of counsel. On May 30, 1995, Weeks filed a motion to order the district court clerk to provide Weeks with copies of the files and exhibits filed by the government. The district court denied this motion because Weeks could obtain the records from the state court. On May 30, 1995, Weeks also filed a request for limited discovery, arguing that the government must disclose exculpatory evidence in its possession. Weeks claimed that the government possessed samples of blood and saliva, semen samples taken from the victim, eyewitness statements, jail records, and medical records (including x-rays) which establish that Weeks was beaten. This motion was denied. On June 12, 1995, the district court denied another of Weeks's motions to produce records because the records were available without cost from the state

custodian.

Weeks also filed another motion for the appointment of counsel, which the district court dismissed as moot. Attached to this motion was the only affidavit filed by Weeks. The affidavit purportedly described events surrounding his state court plea hearing, and asserted that:

> On the 10th of February 1992 the affiant appeared before the judge . . . and informed the judge that he was not going to plead guilty, that he would rather pplead [sic] guilty to the death penalty rather than plead guilty to those charges. The affiant cursed the prosecutor and his attorney and was thrown down in the courtroom floor, handcuffed the affiant and dragged him out of the courtroom. The affiant was taken to the County Jail and immediately taken to Bollinger County Jail. The Sheriff and deputies then beat the affiant half to death and that he was going to pay for not pleading guilty. . . . [T]he affiant was given another shot (drug that caused the affiant to withdraw from his position of not pleading guilty). That evening affiant was taken to the courtroom wherein he pleaded guilty. The plea of guilty was against his will and not knowingly. The sheriff and sheriff (of Cape Girardeau County and Bollinger County), threatened the affiant right before he went in to plead guilty.

Aff. of Robin Weeks (May 30, 1995), <u>reprinted in</u> J.A. at 59.

On June 29, 1995, Weeks filed another set of motions, asking for an order to disqualify the magistrate judge, for leave to appeal in forma pauperis, and for a certificate of probable cause. These motions were all denied and Weeks then moved to vacate the orders. In response, on August 4, 1995, the district court withheld ruling for thirty days and ordered that Weeks could present affidavits to support either Weeks's original motion to disqualify the magistrate judge or Weeks's present motion to reassign the case to a district judge. The district court went on to order that "upon either (1)

-26-

failure to present additional facts by affidavit; or (2)
failure to show cause under the statute for
disqualification or extraordinary circumstances
justifying reassignment, the petitioner's motions will be
denied and this Court will proceed to rule on the
petition for habeas corpus." Clerk's Docket Sheet at 4,
reprinted in J.A. at 88. Weeks did not respond to the
district court's order.

On October 27, 1995, the district court denied
Weeks's habeas petition. The district court held that,
because Weeks had failed to file a Rule 24.035 motion, he
had

defaulted his claims. The district court also found that Weeks had not made the requisite showing of cause and prejudice or actual innocence necessary to overcome his state procedural default. Weeks then appealed to this Court.[6]

On appeal, Weeks asserts that his guilty plea was coerced and that he is actually innocent of kidnaping and raping Ms. Doe. Weeks argues that, because of his actual innocence, the district court's failure to consider his claims results in a fundamental miscarriage of justice. To prevent this miscarriage of justice, Weeks argues, this Court must excuse Weeks's procedural default and address the merits of his constitutional claims.

Weeks's argument rests upon his ability to establish that he is actually innocent. In this regard, Weeks makes three assertions. First, Weeks claims that he has shown evidence of his actual innocence. Second, Weeks asserts that, in the absence of evidence, his allegations of evidence are sufficient. Third, Weeks claims that, at the very least, his assertions that exculpatory evidence exists are sufficient to entitle him to a hearing at

---

[6]Prior to this appeal, Weeks, alleging that his guilty plea had been coerced through physical violence in violation of the Fourteenth Amendment, had filed a 42 U.S.C. § 1983 (1994) action in the United States District Court for the Eastern District of Missouri against various defendants. During the pendency of the instant appeal, a unanimous jury reached a verdict for the defendants. See Weeks v. Copeland, No. 1:94CV00028LMB (E.D. Mo. Feb. 5, 1997). As preclusion was not asserted by the government, we do not reach the question of whether claim and issue preclusion are available in federal habeas corpus proceedings. See Hawkins v. Risley, 984 F.2d 321, 323 n.4 (9th Cir. 1993) (longstanding rule that preclusion is not available in federal habeas corpus proceedings).

which he could develop evidence of his actual innocence.[7]

---

[7]Weeks also argues that no state court has found him to be in procedural default and that, if he has defaulted, then his procedural default is excused by his illiteracy and the state court's allegedly inadequate explanation of the procedure for obtaining post-conviction relief in Missouri. A panel of this Court has already considered and rejected these arguments. See Weeks, 106 F.3d at 249-50 (opinion vacated upon rehearing en banc). We adopt the holding and reasoning of the panel set forth in section II of the opinion as to these issues. Id.

## II.

Weeks argues that he has presented sufficient evidence to show that he is actually innocent.  We disagree.

The federal writ of habeas corpus is available to state prisoners who are in custody in violation of the laws or constitution of the United States.  See 28 U.S.C. § 2254(a) (1994).  A state prisoner wishing to raise claims in a federal petition for habeas corpus ordinarily must first present those claims to the state court and must exhaust state remedies.  See 28 U.S.C. § 2254(b) (1994); see also Ex parte Royall, 117 U.S. 241, 251 (1886) (requiring exhaustion because "of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution").  Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court.  Furthermore, while federal courts will consider all federal legal issues de novo, see Townsend v. Sain, 372 U.S. 293, 318 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), we are generally bound by state court findings of fact.  See 28 U.S.C. § 2254(d) (1994).

A state prisoner who attempts to exhaust his state

remedies may run afoul of state procedural requirements.
A state prisoner who fails to adhere to state-defined

procedures or fails to meet state-imposed time requirements in the state courts may default on his claims in the state courts. Weeks's failure to file a timely Rule 24.035 postconviction motion constitutes just such a default. Generally, federal courts will not consider a state prisoner's federal habeas claim if the state court found the claim to have been defaulted. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

The basis for the procedural default rule is the independent and adequate state grounds doctrine. Coleman, 501 U.S. at 729-30 ("The [independent and adequate state grounds] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."). The Supreme Court has clearly enunciated the rationale behind this rule:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what [the Supreme] Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of [the Supreme] Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31.

Although this jurisdictional bar is not absolute, and

although the Supreme Court has crafted limited exceptions to the general rule, the Court has consistently recognized "the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them." Id. at 750. Furthermore, when a prisoner defaults pursuant to a state procedural rule, "[a]ll of the State's interests--in channeling the resolution of claims to the most appropriate

forum, in finality, and in having an opportunity to correct its own errors--are implicated. . . ." Id.

The United States Supreme Court has articulated two circumstances in which a federal habeas petitioner can overcome a state procedural default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.

To fit within the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence.[8]  Schlup v. Delo, 513 U.S. 298, 321 (1995).[9] With respect to the requisite showing of actual innocence, we have held that:

> [A] petitioner who raises a gateway claim of actual innocence must satisfy a two-part test. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence that was not presented at trial.  Second, the petitioner must establish that it is more likely than not that no reasonable juror would have convicted him in the

---

[8]Weeks alleges both cause and prejudice and actual innocence.  In Weeks v. Bowersox, 106 F.3d 248 (8th Cir. 1997) (opinion vacated upon rehearing en banc), we rejected Weeks's argument that he can demonstrate cause for the default and actual prejudice.  Because we adopt the prior panel's ruling on this issue, we only address Weeks's claim of actual innocence in this opinion.

[9]As the Supreme Court explained

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the Supreme] Court explicitly tied the miscarriage of justice exception to the petitioner's innocence. . . .

> [The miscarriage of justice exception] rests in part on the fact that habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare. . . .  Explicitly tying the miscarriage of justice exception to innocence thus accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the extraordinary case.

Schlup, 513 U.S. at 321-22 (quotations, citation, and note omitted).

light of the new evidence.  The actual innocence exception requires review of procedurally barred, abusive, or successive claims only in the narrowest type of case--when a fundamental miscarriage of justice would otherwise result.

Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996) (quotations, citations, and alteration omitted), cert. denied, 117 S. Ct. 1273 (1997).

Due to important comity and finality interests, the actual innocence gateway is very limited. Few petitions are "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" Schlup, 513 U.S. at 315 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). Few petitions require the exercise of "the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404 (1993). See also McCleskey, 499 U.S. at 494 ("narrow class of cases" and "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime"). As the Supreme Court has stated:

> We remain confident that, for the most part, victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard. But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (emphasis added) (quotations and citation omitted).

In Schlup, the Supreme Court addressed the standard of proof that governs review of actual innocence claims.

See Schlup, 513 U.S. at 322-24.  In addressing this issue, the Court considered the threat to scarce judicial resources and the principles of finality and comity.  See id. at 324.  The Schlup court stated:

> To be credible, such a claim requires petitioner
> to support his allegations of constitutional
> error with new reliable evidence--whether it be

exculpatory scientific evidence, trustworthy
eyewitness accounts, or critical physical
evidence--that was not presented at trial.
Because such _evidence_ is obviously unavailable
in the vast majority of cases, claims of actual
innocence are rarely successful.

_Id._ at 324 (emphasis added).

We agree with the district court that Weeks failed to
support his claim with new reliable evidence.  Weeks
alleged the existence of a wide-ranging conspiracy
involving the state court, state prosecutors, and various
prison officers, all focused upon drugging and coercing
Weeks to plead guilty to a crime he did not commit.[10]  To
support this theory, Weeks submitted precisely one
affidavit--his own.  Beyond his own affidavit, Weeks has
not presented a scintilla of evidence to support his
claims of coercion or conspiracy.  Moreover, evidence
which supports Weeks's claim that he was coerced into
pleading guilty is only indirect evidence that he is

_____

[10]The Missouri state trial court went to great lengths to determine, as a factual
matter, if Weeks entered his guilty plea voluntarily.  See Tr. of Plea of Guilty &
Sentence at 22, reprinted in Resp't's Ex. F at 22 (finding Weeks guilty as charged after
an extensive inquiry and stating, "I find that your pleas of guilty are made and entered
into by you freely, knowingly, and voluntarily, and not as a result of duress or
coercion").  This factual finding must be accorded due deference by federal habeas
courts.  See Ford v. Lockhart, 904 F.2d 458, 461 (8th Cir. 1990).  While the state
court's finding of voluntariness is not per se binding on a federal habeas court, see
Blackledge v. Allison, 431 U.S. 63, 75 (1977), 28 U.S.C. § 2254's mandated deference
to such a finding is particularly proper in light of the state trial court's ability to judge
the defendant's credibility and demeanor at the plea hearing and the fact that "[m]ore
often than not a prisoner has everything to gain and nothing to lose from filing a
collateral attack upon his guilty plea."  Blackledge, 431 U.S. at 71.

actually innocent.

To be sure, Weeks alleges that a staggering amount of evidence exists that proves his actual innocence. This evidence allegedly includes dozens of eyewitnesses, numerous written records, and substantial physical evidence. In claiming the existence

of this mountain of evidence, however, Weeks has failed to produce one iota of substance. Indeed, not only has Weeks failed to submit affidavits from any of his twenty-seven purported witnesses, but he has also failed to specify as to what facts individual witnesses would testify. See Petitioner's Motions to Reply to Show Why an Evidentiary Hearing, and Appointment of Counsel, and Writ of Habeas Corpus Should be Granted (Oct. 17, 1994) at 4, reprinted in J.A. at 43. Because Weeks has not presented new reliable evidence that he is actually innocent, he can not pass through the actual innocence gateway. Therefore, the district court properly concluded that Weeks's state court procedural default bars consideration of his federal habeas claims.

## III.

Anticipating this Court's holding that he has not presented sufficient credible evidence of actual innocence to allow for the waiver of his procedural default, Weeks argues that actual evidence is not required to show actual innocence. Rather, Weeks argues that to overcome a procedural default, a habeas "petitioner's burden is to make specific and particular allegations of the evidence which he contends will support a claim of actual innocence . . . ." Resp. to Suggestion for Reh'g En Banc at 5 (emphasis in the original).[11] We disagree.

_____

[11]Weeks relies on a number of cases to support this expansive description of the actual innocence analysis. After examining these cases, we conclude that they do not support Weeks's interpretation. See Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986) ("The prisoner may make the requisite showing by establishing that under the probative

Adoption of a rule that would allow a waiver of a state procedural default based on mere allegations of actual innocence is not only contrary to the express language of Schlup, 513 U.S. at 324 ("new reliable evidence"), but also runs counter to the spirit and purpose of the actual innocence gateway. Allowing a creative prisoner to overcome his state procedural default with well drafted allegations of evidence would make a mockery of the Supreme Court's concern for finality, comity, and judicial economy that underlies the limited scope of the actual innocence exception.

At bottom, Weeks only gives his word that he is innocent and that he can produce evidence to prove it. Weeks's bare, conclusory assertion that he is actually innocent is not sufficient to invoke the exception. "Were protestation of innocence the only prerequisite to application of this exception, we fear that actual innocence would become a gateway forever open to habeas petitioners' defaulted claims." Wyldes v. Hundley, 69 F.3d 247, 254 (8th Cir. 1995), cert. denied, 116 S. Ct. 1578 (1996).

---

evidence he has a colorable claim of factual innocence." (emphasis added)); Blackledge, 431 U.S. at 76 (discussing the summary dismissal standard; the Court did not discuss actual innocence as there was no procedural default of a constitutional claim); Fontaine v. United States, 411 U.S. 213, 214 (1973) (noting that detailed factual allegations that plea was coerced are in part documented by records); East v. Scott, 55 F.3d 996 (5th Cir. 1995) (no actual innocence analysis); Houston v. Lockhart, 982 F.2d 1246 (8th Cir. 1993) (en banc) (granted hearing based on ineffective assistance of counsel, not a showing of actual innocence); Amos v. Minnesota, 849 F.2d 1070 (8th Cir. 1988) (no actual innocence analysis); Wallace v. Lockhart, 701 F.2d 719 (8th Cir. 1983) (no actual innocence analysis); United States v. Goodman, 590 F.2d 705 (8th Cir. 1979) (no actual innocence analysis).

**IV.**

Weeks's final argument for an evidentiary hearing implicitly concedes arguendo that he has not yet passed through the actual innocence gateway. Rather, Weeks claims that his assertions that exculpatory evidence exists are sufficient to entitle him to a hearing at which he could develop the evidence needed to proceed through the actual innocence gateway. We disagree.

The failure to develop evidence of his actual innocence in the state trial court is attributable to Weeks. By entering a guilty plea in the state court, and then failing to seek postconviction relief, Weeks defaulted on his right to challenge his guilty plea in

state court.  Without properly pursuing this issue in state court, Weeks put himself in the position of having to establish either cause and prejudice or actual innocence in order to proceed with a federal habeas petition.

Faced with this predicament, Weeks concocts a novel solution.  Because his confinement makes it difficult for him to present evidence that he is actually innocent and because it is therefore difficult for Weeks to fit within the actual innocence gateway,  Weeks argues that he is entitled to an evidentiary hearing prior to any hearing on his federal habeas claims.  According to Weeks, his many assertions that exculpatory evidence exists--assertions being much easier to make--should entitle him to a prehearing hearing.  Weeks claims he is entitled to this prehearing hearing in order to give him a fair opportunity to make the requisite showing of evidence of actual innocence.  In essence, Weeks is seeking to relitigate the factual basis of his conviction after failing to present any exculpatory evidence in the state trial court.

We reject Weeks's argument that he is entitled to an evidentiary hearing in order to allow him to make the showing that entitles him to the evidentiary hearing contemplated by Schlup.  We can find no statutory or judicial authority for Weeks's proposed prehearing hearing.  Because such an entitlement has support neither in the law nor in common sense, we decline to fashion such an entitlement out of thin air.  Rather, we choose to follow the holdings of this Court in Bannister v. Delo, 100 F.3d 610 (8th Cir. 1996), and Battle v. Delo,

-44-

64 F.3d 347 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 1881 (1996).

In <u>Bannister</u>, the petitioner sought to overcome the procedural bar to the hearing of his successive habeas claims with a claim of actual innocence.  The <u>Bannister</u> court explained that the petitioner

incorrectly asserts that an evidentiary hearing
was required so that he could develop evidence
in support of his claim of actual innocence.  In
Battle, 64 F.3d at 353, we rejected the argument
that an evidentiary hearing was necessary to
enable the petitioner to develop evidence which,
he claimed, would exonerate him.  Noting that in
essence, petitioner was asking us to excuse his
evidentiary default as to his claim of actual
innocence, in order that he may develop
sufficient evidence of his actual innocence, we
found this circular argument was without merit.

Bannister, 100 F.3d at 617 (quotations, citations, and
alterations omitted).

In Battle, this Court held that "[t]o avail himself
of [the actual innocence gateway], it is the
petitioner's, not the court's, burden to support his
allegations of actual innocence by presenting new
reliable evidence of his innocence."  64 F.3d at 354 (emphasis
in original) (quotations omitted).  The Battle court
further explained that:

> Even if an evidentiary hearing was necessary
> for Battle to develop and present the serology
> evidence, he has not shown the cause and
> prejudice, or fundamental miscarriage of
> justice, necessary to excuse his failure to
> develop this evidence in state court. . . .
>
> More fundamentally, a remand is
> inappropriate because the "actual innocence"
> gateway through a procedural bar is not intended
> to provide a petitioner with a new trial, with
> all the attendant development of evidence, in
> hopes of a different result.  Rather it is an
> opportunity for a petitioner, aggrieved by an

allegedly defective trial and having inexcusably defaulted the available remedies, to raise such a strong doubt to his guilt that, in hindsight, we cannot have confidence in the trial's outcome. . . .

Id. (citations omitted).

In Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), the Supreme Court established the requirement that, if a petitioner failed to develop the factual basis of a claim in the state trial court, the petitioner must show cause and prejudice or a fundamental miscarriage of justice before relitigating the facts. Id. at 11-12.[12] The Court explained the rationale for this rule as follows:

As in cases of state procedural default, application of the cause-and-prejudice standard

---

[12]Building on the requirement of Tamayo-Reyes, Congress adopted the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, which added an evidentiary hearing provision to the habeas corpus statute. Section 2254(e)(2), as amended by the Antiterrorism and Effective Death Penalty Act, provides that:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
(A) the claim relies on--
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 104, 110 Stat. at 1219.

Where omission of material facts from the state court record is attributable to the petitioner, the new Act both codifies and narrows the Tamayo-Reyes standard. Accordingly, whether we apply the Tamayo-Reyes standard or the § 2254(e)(2) standard which superseded Tamayo-Reyes, the result is the same.

to excuse a state prisoner's failure to develop
material facts in state court will appropriately
accommodate concerns of finality,

> comity, judicial economy, and channeling the
> resolution of claims into the most appropriate
> forum.

_Tamayo-Reyes_, 504 U.S. at 8.  Weeks's argument for a prehearing hearing runs counter to this reasoning.

Weeks's guilty plea "comprehend[ed] all of the _factual_ and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." _United States v. Broce_, 488 U.S. 563, 569 (1989) (emphasis added).  The failure to further develop facts in the state trial court is attributable to Weeks.  A federal court's relitigation of the factual basis for Weeks's conviction--even in the context of a claim of actual innocence tied to a state procedural default-- would run afoul of bedrock principles of finality, comity, and judicial economy.  Review of the facts sustaining Weeks's conviction is barred unless Weeks actually makes the requisite showing to excuse his failure to develop exculpatory evidence in state court.

We are aware that it would be more convenient for habeas petitioners to have the opportunities attendant upon an evidentiary hearing, including court-ordered discovery and subpoenas for witnesses, to gather evidence to support actual innocence claims.  But this additional convenience to petitioners does not justify an expansive interpretation of the actual innocence gateway.  Nor do we believe that our ruling will prevent habeas petitioners from gathering the evidence required for a showing of actual innocence.  _See_ 28 U.S.C. § 2246 (1994) (authorizing submission of affidavits by habeas

petitioners at the discretion of the judge). Habeas petitions are typically decided on the factual record developed in the state trial court and, therefore, only in the minority of cases are evidentiary hearings held. In many ways, habeas petitions are by their nature similar to summary judgment proceedings. For a petitioner to carry his burden, he must submit relevant evidence to the district court before the court rules on his petition.

In the instant case, Weeks must bear the responsibility for failing to present the district court with any evidence upon which the district court could hold Weeks's procedural default waived. Weeks had more than a full year to present credible evidence of his actual innocence to the district court, and yet Weeks failed to submit anything more than his own unsubstantiated affidavit. Indeed, on August 4, 1995, nearly a year after Weeks filed his habeas petition, the district court entered an order allowing Weeks to present affidavits supporting either his original motion to disqualify the magistrate judge or his present motion to reassign the case to a district judge. The district court went so far as to warn Weeks that, if Weeks did not respond, the district court would proceed to rule on Weeks's petition for habeas corpus. Despite this explicit opportunity to present evidence, Weeks did nothing. Weeks did not submit a single affidavit on the question of the magistrate judge's jurisdiction.

More importantly, beyond mere assertions, the only affidavit Weeks submitted to establish his actual innocence was his own. This is despite the fact that the district court's order gave Weeks clear notice that the district court would soon rule on his petition and that the district court was receptive to the receipt of affidavit evidence. While Weeks found the resources to file endless motions recounting alleged, and somewhat bizarre, events, Weeks chose to submit almost no evidence to establish his actual innocence. Thus, Weeks having failed to produce evidence of actual innocence, we reject his argument for a novel prehearing hearing entitlement.

## V.

Accordingly, the judgment of the district court is affirmed.

LOKEN, Circuit Judge, concurring, with whom BEAM, Circuit Judge, joins.

For me, the determining factor in this case is the guilty plea.  In every case in which the Supreme Court has discussed the actual innocence exception to procedural

bar, the habeas petitioner had been convicted after a trial or sentenced to death after a trial-type sentencing hearing -- Smith v. Murray, Kuhlmann v. Wilson, Murray v. Carrier, Dugger v. Adams, McCleskey v. Zant, Sawyer v. Whitley, and Herrera v. Collins, all cited in Schlup v. Delo, 513 U.S. 298 (1995).  This is reflected in the Court's actual innocence standard, which requires the district court "to assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced *at trial*."  Schlup, 513 U.S. at 332 (emphasis added).

In my view, there is an inherent paradox in the notion that someone who has stood in open court and declared, "I am guilty," may turn around years later and claim that he deserves to pass through the actual innocence gateway.  Because a guilty plea waives the defendant's right to prove his actual innocence at trial, see, e.g., McMann v. Richardson, 397 U.S. 759 (1970), a strong argument can be made that a guilty plea should absolutely foreclose a post-conviction claim of actual innocence, a question we left open in Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 116 S. Ct. 1049 (1996).  The argument against such an absolute rule is that (i) facts which would invalidate a guilty plea are typically outside the record and must be developed in a post-conviction proceeding, and (ii) some circumstances that would invalidate a guilty plea are consistent with actual innocence, a torture-induced plea being the most obvious example.  But if these concerns justify leaving the actual innocence gateway open for truly extraordinary guilty plea cases, we must fashion a standard that identifies the truly extraordinary and is consistent with the principle that a procedurally valid guilty plea is "a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).

Our vacated panel decision held that the actual innocence inquiry is to "compare what the state alleged at Weeks's plea hearing that it could prove with the evidence that Weeks has asserted in his pleadings that he could produce." Weeks v. Bowersox, 106 F.3d 248, 250 (8th Cir. 1997). In my view, that standard ignores the most important piece of evidence in the record, Weeks's guilty plea. "A plea of guilty is

more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."  Boykin v. Alabama, 395 U.S. 238, 242 (1969).  Because a procedurally valid guilty plea is itself  a sufficient basis to convict, the government does not present or even describe its evidence at the guilty plea hearing; it must only satisfy the trial court that there is a sufficient factual basis for the plea.  Thus, the panel's standard posits an unrealistic evidentiary comparison, skewed to give the habeas petitioner who has pleaded guilty a relatively easy pass through the actual innocence gateway.  And even if the panel's standard were modified to permit the State to present its trial evidence at the actual innocence hearing, the inquiry would still be skewed by the passage of time that inevitably compromises the government's ability to prove its case.

For these reasons, I conclude that the actual innocence inquiry in guilty plea cases must focus primarily on the guilty plea.  Unless the habeas petitioner has newly-discovered evidence that his guilty plea was a false declaration of guilt, he should not pass through the actual innocence gateway.  This standard may well reduce the actual innocence gateway to a tiny portal in guilty plea cases.  But in my view that is appropriate, both because the cause and prejudice exception to procedural bar is still available, and because "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas."  United States v. Timmreck, 441 U.S. 780, 784 (1979).

A guilty plea is a "grave and solemn act," not lightly to be set aside.  United States v. Hyde, 117 S. Ct. 1630, 1634 (1997), quoting Brady v. United States, 397 U.S. 742, 748 (1970).  In this case, Weeks stood in open court and admitted that he dragged the victim from her car, threatened her with a knife, and forcibly raped her.  When asked why he was pleading guilty, Weeks answered, "Because I did what they say I did," and he further admitted that "everything in the charge is true and correct."  Weeks has presented no

-56-

newly-discovered evidence that would undermine this legally conclusive admission of guilt.  His affidavit that he pleaded guilty because the county

sheriff and deputies "beat the affiant half to death" is uncorroborated, has no inherent credibility, and thus would not entitle Weeks to an evidentiary hearing on an involuntary guilty plea claim *that was not procedurally defaulted.* Compare Blackledge, 431 U.S. at 75-76. I therefore agree with the court's decision to affirm.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting, with whom RICHARD S. ARNOLD, Chief Judge, McMILLIAN and FLOYD R. GIBSON, Circuit Judges, join.

Rubin Weeks filed his petition for habeas corpus under 28 U.S.C. § 2254. By way of excusing the procedural default that the state pleaded in bar, Mr. Weeks alleged that he was actually innocent of the charges against him, listed by name a number of witnesses who could exonerate him, and averred the existence of DNA, blood, saliva, and semen tests that would show that he did not commit the rape and kidnapping of which he was convicted. The court, though it ridicules these allegations, does not hold that they are delusional, or otherwise inherently incredible; nor does it deny that, if he produced the evidence that he claims exists, and it was believed, Mr. Weeks would have made out a case that he was actually innocent. Instead, the court holds, as I understand it, that Mr. Weeks has failed to submit sufficient evidence of his innocence, and therefore that his petition was properly dismissed.

The infirmity in the court's position is that it confuses pleading with proof. The Rules Governing Section 2254 Cases in the United States District Courts, in keeping with modern trends toward notice pleading,

require a person seeking a writ of habeas corpus merely to "set forth in summary form the facts supporting each of the grounds" on which the petitioner relies. <u>See</u> Rule 2(c). A form appended to the rules and intended for the use of habeas petitioners, moreover, urges them to summarize "<u>briefly</u> the <u>facts</u>" (emphasis in original) on the basis of which they are seeking relief, and in at least four other places, the same form directs petitioners to "tell your story <u>briefly</u>" (emphasis in original). While the appendix to the rules does not seem to contain a

recommended form for responsive pleadings from a petitioner when the matter at issue is a petitioner's procedural default, it does have a form for situations in which the respondent claims that the petition is a successive one; and, in this latter instance, petitioners are told merely to explain their position by stating "FACTS" (capitals in original).

It is plain from this that all that habeas petitioners are required to do in their pleadings is to set out facts which, if found to be true, would entitle them to some legal conclusion of which they are seeking the benefit. There is no requirement that evidence be pleaded in habeas cases, and, presumably, any such requirement that a court would impose would be unauthorized because it would be contrary to the rules as they now stand. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-69 (1993), where the court held that federal courts were not authorized to apply a more stringent pleading requirement in cases brought under 42 U.S.C. § 1983, because doing so could not be squared with the Federal Rules of Civil Procedure. Perhaps it would be useful, or even desirable, to establish heightened pleading standards in habeas corpus cases. But "that is a result which must be obtained by the process of amending" the Rules Governing Section 2254 Cases in the United States District Courts, "and not by judicial interpretation." Id. at 168.

There is also no requirement in the rules that habeas petitioners attach to their petitions or other pleadings affidavits or documentary evidence supporting the factual allegations that those pleadings contain. No doubt, the judge reviewing the pleadings in habeas cases may, in imitation of Fed. R. Civ. P. 56(e), require such affidavits, in order to determine whether there are any material facts in dispute that would require an evidentiary hearing on a petitioner's claim. See, e.g., Rule 8(a). But even before a judge can do that, the petitioner may well be entitled to discovery to help marshal the evidence to support the factual allegations in the petition. See Rule 6(a) and Bracy v. Gramley, 65 U.S.L.W. 4435, 4436, 4438, 1997 WL 303400 (U.S. June 9, 1997). In

the present case, the district court never asked Mr. Weeks to support his claim of actual innocence with affidavits. The court makes much of the fact that Mr. Weeks, when asked to do so, failed to submit affidavits supporting his motions to disqualify the magistrate judge from the case and to reassign the case to a district judge. But this fact has no relevance to the matter at issue, namely, Mr. Weeks's actual innocence.

It will not be a matter of surprise if petitioner ultimately fails to prevail in this case. Habeas petitioners hardly ever win. But the court simply short-circuits the rules established for civil matters in general and essentially decides the case on the merits without regard to the procedural posture in which it comes before us. Since Mr. Weeks has pleaded facts that, if proved, would excuse his procedural default, his case should be allowed to proceed in the district court. If he prevails on his claim of actual innocence, then, for the reasons that I indicated in Weeks v. Bowersox, 106 F.3d 248 (8th Cir. 1997), the district court would be obligated to proceed to judgment on his underlying claim, namely, that his plea was coerced, because his original petition contains facts that, if proved, would allow him to withdraw that plea. See Blackledge v. Allison, 431 U.S. 63 (1977).

For the reasons indicated, I respectfully dissent.

FLOYD R. GIBSON, Circuit Judge, dissenting.

I join in Judge Morris Arnold's dissent. I write separately, however, to express some concerns I have which are illustrated by this case. Where a habeas petitioner brings a bona fide gateway claim of actual innocence, accompanied by the proper pleadings and supporting data, it is advisable and appropriate to allow the defendant an evidentiary hearing on the issue. I admit that the majority opinion fairly well sets out that Weeks, in pleading guilty to the crime charged, made some strong statements connecting him to this case, though he did not personally elucidate any actual details of his participation. Weeks claims he pleaded guilty because he was beaten and

tortured but that he is, in fact, actually innocent of the crimes to which he pled. This poses a difficult dilemma for me. If Weeks is not guilty, a fundamental miscarriage of justice results if we do not provide him with a hearing to prove his innocence. On the other hand, if he is guilty, by claiming that he is actually innocent, he causes a great abuse of the legal process, and possibly his attorney could be involved in this abuse if he is aware of facts supporting Weeks's guilt. When such an abuse of the legal process occurs, a habeas petitioner using these tactics should be sanctioned if it is found that his claim of actual innocence has no merit. An appropriate sanction would limit the number of illegitimate claims, while allowing those who are actually innocent to seek redress.

The record in this case, as expressed in the dissent by Judge Morris Arnold, presents some doubts as to Weeks's guilt. The panel opinion appropriately remanded the case for an evidentiary hearing to resolve these doubts, one way or another. <u>See</u> <u>Weeks v. Bowersox</u>, 106 F.3d 248, 251 (8th Cir. 1997) (opinion vacated upon rehearing en banc). I therefore adhere to the original panel opinion and join in Judge Morris Arnold's dissent.

```
    A true copy.

        Attest:

            CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.
```